# EXHIBIT A

217TH JUDICIAL DISTRICT COURT

# CASE SUMMARY
## CASE NO. CV-00412-17-06

| | | |
|---|---|---|
| DAPHNE NOBLE FREE<br>VS.<br>ALLSTATE INDEMNITY COMPANY | §<br>§<br>§<br>§ | Location:  217th Judicial District Court<br>Judicial Officer:  Inselmann, Robert K, Jr.<br>Filed on:  **06/21/2017** |

---

### CASE INFORMATION

Case Type:  **Contract - Other**

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**

| | |
|---|---|
| Case Number | CV-00412-17-06 |
| Court | 217th Judicial District Court |
| Date Assigned | 06/21/2017 |
| Judicial Officer | Inselmann, Robert K, Jr. |

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Plaintiff | Free, Daphne Noble | LOVE, MIKE<br>*Retained*<br>936-632-2000(W) |
| Defendant | ALLSTATE INDEMINITY COMPANY | CAUSEY, JOHN M.<br>*Retained*<br>409-760-1599(W) |

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 06/21/2017 | CIVIL INFORMATION SHEET | |
| 06/21/2017 | Original Petition (OCA)<br>*PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE* | |
| 06/22/2017 | **CITATION**<br>ALLSTATE INDEMINITY COMPANY<br>Unserved<br>*ENT 17770229* | |
| 08/18/2017 | **CITATION**<br>ALLSTATE INDEMINITY COMPANY<br>Served: 09/01/2017<br>Response Due: 09/25/2017<br>*ENT 18949676* | |
| 08/18/2017 | NO FEE DOCUMENTS<br>*Request for Citation* | |
| 09/12/2017 | NO FEE DOCUMENTS<br>*Proof of Service on Defendant Allstate* | |
| 09/13/2017 | Original Answer<br>Party: Defendant ALLSTATE INDEMINITY COMPANY | |

| DATE | FINANCIAL INFORMATION |
|---|---|

217TH JUDICIAL DISTRICT COURT

# CASE SUMMARY

## CASE NO. CV-00412-17-06

**Defendant** ALLSTATE INDEMINITY COMPANY

| | |
|---|---|
| Total Charges | 40.00 |
| Total Payments and Credits | 40.00 |
| **Balance Due as of  9/20/2017** | **0.00** |

**Plaintiff** Free. Daphne Noble

| | |
|---|---|
| Total Charges | 310.00 |
| Total Payments and Credits | 310.00 |
| **Balance Due as of  9/20/2017** | **0.00** |

*Printed on 09.20.2017 at 1:33 PM*

2017 4:05 P
Reba Squyres, District Cle
Angelina County, Tex
By: Alicia Murph
Deputy Cle

# CIVIL CASE INFORMATION SHEET

CV-00412-17-06

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____ COURT *(FOR CLERK USE ONLY):* _____

STYLED Daphne Noble Free v. Allstate Idemnity Company

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing case information sheet is: |
|---|---|---|
| **Name:** Mile Love / **Email:** mikelove@texaslawoffice.com | Plaintiff(s)/Petitioner(s): Daphne Noble Free | [X] Attorney for Plaintiff/Petitioner [ ] Pro Se Plaintiff/Petitioner [ ] Title IV-D Agency [ ] Other: |
| **Address:** P. O. Box 527 / **Telephone:** 9366322000 | | Additional Parties in Child Support Case: |
| **City/State/Zip:** Lufkin, TX 75902-0527 / **Fax:** 9366322005 | Defendant(s)/Respondent(s): Allstate Idemnity Company | Custodial Parent: _____ Non-Custodial Parent: _____ |
| **Signature:** / **State Bar No:** 24004778 | [Attach additional page as necessary to list all parties] | Presumed Father: _____ |

**2. Indicate case type, or identify the most important issue in the case *(select only 1):***

| Civil | | | Family Law | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | [ ] Enforcement |
| *Debt/Contract* | [ ] Assault/Battery | [ ] Eminent Domain/ Condemnation | [ ] Annulment | [ ] Modification—Custody |
| [X] Consumer/DTPA | [ ] Construction | [ ] Partition | [ ] Declare Marriage Void | [ ] Modification—Other |
| [ ] Debt/Contract | [ ] Defamation | [ ] Quiet Title | *Divorce* | **Title IV-D** |
| [ ] Fraud/Misrepresentation | *Malpractice* | [ ] Trespass to Try Title | [ ] With Children | [ ] Enforcement/Modification |
| [ ] Other Debt/Contract: | [ ] Accounting | [ ] Other Property: | [ ] No Children | [ ] Paternity |
| | [ ] Legal | | | [ ] Reciprocals (UIFSA) |
| *Foreclosure* | [ ] Medical | | | [ ] Support Order |
| [ ] Home Equity—Expedited | [ ] Other Professional Liability: | **Related to Criminal Matters** | **Other Family Law** | |
| [ ] Other Foreclosure | | [ ] Expunction | [ ] Enforce Foreign Judgment | **Parent-Child Relationship** |
| [ ] Franchise | [ ] Motor Vehicle Accident | [ ] Judgment Nisi | [ ] Habeas Corpus | [ ] Adoption/Adoption with Termination |
| [ ] Insurance | [ ] Premises | [ ] Non-Disclosure | [ ] Name Change | [ ] Child Protection |
| [ ] Landlord/Tenant | *Product Liability* | [ ] Seizure/Forfeiture | [ ] Protective Order | [ ] Child Support |
| [ ] Non-Competition | [ ] Asbestos/Silica | [ ] Writ of Habeas Corpus— Pre-indictment | [ ] Removal of Disabilities of Minority | [ ] Custody or Visitation |
| [ ] Partnership | [ ] Other Product Liability List Product: | [ ] Other: | [ ] Other: | [ ] Gestational Parenting |
| [ ] Other Contract: | | | | [ ] Grandparent Access |
| | [ ] Other Injury or Damage: | | | [ ] Parentage/Paternity |
| | | | | [ ] Termination of Parental Rights |
| **Employment** | **Other Civil** | | | [ ] Other Parent-Child: |
| [ ] Discrimination | [ ] Administrative Appeal | [ ] Lawyer Discipline | | |
| [ ] Retaliation | [ ] Antitrust/Unfair Competition | [ ] Perpetuate Testimony | | |
| [ ] Termination | [ ] Code Violations | [ ] Securities/Stock | | |
| [ ] Workers' Compensation | [ ] Foreign Judgment | [ ] Tortious Interference | | |
| [ ] Other Employment: | [ ] Intellectual Property | [ ] Other: | | |

| Tax | Probate & Mental Health | |
|---|---|---|
| [ ] Tax Appraisal | *Probate/Wills/Intestate Administration* | [ ] Guardianship—Adult |
| [ ] Tax Delinquency | [ ] Dependent Administration | [ ] Guardianship—Minor |
| [ ] Other Tax | [ ] Independent Administration | [ ] Mental Health |
| | [ ] Other Estate Proceedings | [ ] Other: |

**3. Indicate procedure or remedy, if applicable *(may select more than 1):***

| | | |
|---|---|---|
| [ ] Appeal from Municipal or Justice Court | [ ] Declaratory Judgment | [X] Prejudgment Remedy |
| [ ] Arbitration-related | [ ] Garnishment | [ ] Protective Order |
| [ ] Attachment | [ ] Interpleader | [ ] Receiver |
| [ ] Bill of Review | [ ] License | [ ] Sequestration |
| [ ] Certiorari | [ ] Mandamus | [ ] Temporary Restraining Order/Injunction |
| [ ] Class Action | [ ] Post-judgment | [ ] Turnover |

**4. Indicate damages sought *(do not select if it is a family law case):***

[ ] Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
[X] Less than $100,000 and non-monetary relief
[ ] Over $100,000 but not more than $200,000
[ ] Over $200,000 but not more than $1,000,000
[ ] Over $1,000,000

Rev. 2/13

 **CT Corporation**

**Service of Process Transmittal**
08/28/2017
CT Log Number 531833038

**TO:** L&R Home Office Intake Unit
Allstate Insurance Company
2775 Sanders Rd # A2W
Northbrook, IL 60062-6110

**RE:** Process Served in Texas

**FOR:** Allstate Indemnity Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Daphne Noble Free, Pltf. vs. Allstate Indemnity Company, Dft. |
| **DOCUMENT(S) SERVED:** | Citation, Return, Original Petition, Attachment(s) |
| **COURT/AGENCY:** | 217th District Court Angelina County, TX<br>Case # CV004121706 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/28/2017 postmarked on 08/22/2017 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next following the expiration of 20 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Mike Love<br>Mike Love & Associates, L.L.C.<br>202 E. Lufkin Ave.<br>Lufkin, TX 75901<br>936-632-2000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/28/2017, Expected Purge Date: 09/02/2017 |
| | Image SOP |
| | Email Notification,  Jessica Schultz  Jessica.Schultz@allstate.com |
| | Email Notification,  Tahsina Mehdi  tmehd@allstate.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201 |
| **TELEPHONE:** | 214-932-3601 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.









U.S. POSTAGE
LIVINGSTON, TX
AUG 28 17
AMOUNT
$13.70
R2303910057-15

CERTIFIED MAIL

7016 1370 0002 1444 2569

PRIORITY MAIL
★ TRACKED ★
★ INSURED ★
UNITED STATES POSTAL SERVICE®

C. T. CORPORATION SYSTEMS
1999 BRYAN STREET, SUITE 900
DALLAS, TEXAS 75201-3136

863 CR 753
NACOGDOCHES, TX
75964

## CITATION

**CLERK OF THE COURT**
Reba Squyres
District Clerk
P.O. Box 908
Lufkin, Texas 75902

**ATTORNEY FOR PLAINTIFF**
MIKE LOVE
PO BOX 527
LUFKIN TX  75902

### THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO:  ALLSTATE INDEMINITY COMPANY, Defendant

GREETINGS:  You are commanded to appear by filing a written answer to the plaintiff's petition at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service hereof, before the 217th Judicial District Court of Texas, at the Courthouse in Lufkin, Texas.

Said plaintiff's petition was filed on **June 21, 2017 at 4:05 P.M.**

The file number of said suit being **CV-00412-17-06.**

The style of the case is:

**DAPHNE NOBLE FREE**
**VS.**
**ALLSTATE INDEMNITY COMPANY**

A copy of plaintiff's petition accompanies this citation.

Issued on this the 18th day of August, 2017.

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at office in Lufkin, Texas, on this the 18th day of August, 2017.

FEES UNPAID RULE 103

Reba Squyres, District Clerk
Angelina County, Texas
P.O. Box 908
Lufkin, Texas 75902

By: _Alicia Murphy_ , Deputy
Alicia Murphy, Deputy District Clerk

Cause: CV-00412-17-06

Executed when copy is delivered:
This is a true copy of the original citation with _Plaintiff's Original Petition  and Request for Disclosure_
was delivered to defendant _____, on the _____ day of
_____, 20_____.

_____, Officer

_____, County, Texas

By:_____, Deputy

**ADDRESS FOR SERVICE:**
Defendant:
ALLSTATE INDEMINITY COMPANY
R/A CT CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS TX  75201

### OFFICER'S RETURN

Came to hand on the _21_ day of _AUGUST_____, 20_17_, at _4:30 P_, o'clock
_P_.m., and executed in _____ County, Texas by delivering to each of the within
named defendants in person, a true copy of this Citation and _Plaintiff's Original Petition and Request for Disclosure_
with the date of delivery endorsed thereon, together with the accompanying copy of the plaintiff's petition, at
the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
| --- | --- | --- |
| _____ | _____ | ✗ CERTIFIED #7016 1370 0002 1444 2564 |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being:
_____

and the cause or failure to execute this process is:
_____

and the information received as to the whereabouts of said defendant(s) being:
_____

**FEES:**
Serving Petition and Copy    $_____
Total                        $_____

_____, Officer
_____, County, Texas

By:_____, Deputy

_____
Affiant

*Rule 107 Verification: Subscribed and sworn to by the above named _____ before me this the _____
day of _____, 20___, to certify which witness my hand and seal of office.

_____
Person Administering Oath

Filed 6/21/2017 4:05 PM
Reba Squyres, District Clerk
Angelina County, Texas
By: Alicia Murphy,
Deputy Clerk

CAUSE NO. CV-00412-17-06

| | | |
|---|---|---|
| **DAPHNE NOBLE FREE** | § | **IN THE DISTRICT COURT** |
| | § | |
| **V.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **ALLSTATE INDEMNITY COMPANY** | § | **ANGELINA COUNTY, TEXAS** |
| | § | |

### PLAINTIFF'S ORIGINAL PETITION
### AND REQUEST FOR DISCLOSURE

Plaintiff, Daphne Noble Free, files this original petition, request for declaratory judgment and request for disclosure against Defendant, Allstate Indemnity Company, and alleges as follows:

### DISCOVERY-CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 1 of Texas Rule of Civil Procedure 190.3.

### PARTIES

2.      Plaintiff, Daphne Noble Free, f/n/a Daphne Noble, is an individual residing in Angelina County at 240 Shelley, Pollok, Texas 75969.

3.      Defendant, Allstate Indemnity Company may be served with process via certified mail, return receipt requested by serving its designated agent for service of process, CT Corporation Systems, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

### JURISDICTION AND VENUE

4.      The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

5.      Plaintiff seeks monetary relief pursuant to TRCP, Rule 47(c)(2).

6.    Venue in Angelina County is proper in this cause under Section 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## RULE 28. TEXAS RULES OF CIVIL PROCEDURE

7.    To the extent that any of the above-named Defendant is conducting business pursuant to a trade name or assumed name, then suit is brought against it pursuant to the terms of Rule 28, TEXAS RULES OF CIVIL PROCEDURE, and Plaintiff hereby demands that upon answering this suit, that Defendant answer in its correct legal name and assumed name.

## FACTS

8.    This lawsuit arises out of Defendant's refusal to pay full contractual benefits for Plaintiff's fire loss covered by an insurance policy issued by Allstate Indemnity Company.  The incident in question occurred about 6:30 AM, June 18, 2015, in Angelina County, Texas.  Plaintiff Daphne Free was notified by a neighbor that her home was on fire.  After further investigation, it appears the fire was set intentionally by an unknown individual.   Plaintiff submitted a claim to Allstate Indemnity Company, which acknowledged Plaintiff's claim on or about, August 19, 2015.  To date, Defendant has made only partial payment on Plaintiff's claims; moreover, because the home was a total loss, Plaintiff's mortgage company has refused to accept or apply the partial payment tendered by Defendant to the mortgage.

## SUIT FOR BREACH OF CONTRACT & FAILURE TO PAY PLAINTIFF'S LIQUIDATED CLAIM

9.      Defendant's actions as described herein constitute a breach of contract committed upon Plaintiff in violation of Texas law causing damage to Plaintiff for which she now sues.

10.      October 5, 2015, Plaintiff requested Allstate provide a copy of the insurance policy including any endorsements or amendments.

11.      December 10, 2015, Plaintiff requested Allstate to provide information regarding Defendant's acceptance of the claim and Defendant's finalization of the claim.

12.      December 31, 2015, Defendant made a partial payment for $29,385.03 which Defendant claimed was the 'actual value' of Plaintiff's home.  Those funds have been tendered to Plaintiff's mortgage holder which is holding the funds in escrow because the monies are insufficient to pay off the loan.

13.      Under the express terms of the policy, Plaintiff's home was covered for a value up to $50,320.00. The insurance contract is described as an "actual value" contract. However, Texas Insurance Cd. §863.053 controls payment of total loss fire claims in Texas stating:

(a) A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

(b) An insurance company shall incorporate verbatim the provisions of Subsection (a) in each fire insurance policy issued as coverage on real property in this state.

Tex.Ins.Cd. §863.053

## ALLSTATE INDEMNITY COMPANY

c) a motorized wheel chair;

d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

e) a golf cart owned by an **insured person** when used for golfing purposes;

f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g) lawn or garden implements under 40 horsepower;

h) **bodily injury** to a **residence employee.**

6. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a) has inboard or inboard-outboard motor power of more than 50 horsepower;

b) is a sailing vessel 26 feet or more in length;

c) is powered by one or more outboard motors with more than 25 total horsepower;

d) is designated as an airboat, air cushion, or similar type of watercraft; or

e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee.**

7. We do not cover **bodily injury** or **property damage** arising out of:

a) the negligent supervision by any **insured person** of any person; or

b) any liability statutorily imposed on any **insured person**

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. We do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. We do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person.**

12. We do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person.**

We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. We do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person.** This exclusion does not apply to **bodily injury** to a **residence employee.**

14. We do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person.** This exclusion does not

**Page 28**

## ALLSTATE INDEMNITY COMPANY

apply if the **property damage** is caused by fire, explosion or smoke.

15. We do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. We do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

17. We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

18. We do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

### Coverage Y
### Guest Medical Protection

#### Losses We Cover Under Coverage Y:

We will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or

d) is sustained by a **residence employee**.

#### Losses We Do Not Cover Under Coverage Y:

1. We do not cover **bodily injury** which is caused intentionally by or at the direction of an **insured person**.

2. We do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. We do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

## ALLSTATE INDEMNITY COMPANY

6.  We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a)  has inboard or inboard-outboard motor power of more than 50 horsepower;
    b)  is a sailing vessel 26 feet or more in length;
    c)  is powered by one or more outboard motors with more than 25 total horsepower;
    d)  is designated as an airboat, air cushion, or similar type of watercraft; or
    e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

    This exclusion does not apply to a **bodily injury** to a **residence employee**.

7.  We do not cover **bodily injury** arising out of:
    a)  the negligent supervision by any **insured person** of any person; or
    b)  any liability statutorily imposed on any **insured person**

    arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.  We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

    We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9.  We do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. We do not cover **bodily injury** arising out of the past or present business activities of an **insured person**.

    We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. We do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. We do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

13. We do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

14. We do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

### Additional Protection

We will pay, in addition to the limits of liability:
1.  **Claim Expense**
    We will pay:
    a)  all costs we incur in the settlement of any claim or the defense of any suit against an **insured person;**
    b)  interest accruing on damages awarded, including prejudgment interest, if any. **We** will pay this interest only until **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy. Interest will be **paid** only on damages which do not exceed **our** limits of liability;
    c)  premiums on bonds required in any suit **we** defend; we will not pay bond premiums in an amount that is more than

## ALLSTATE INDEMNITY COMPANY

our limit of liability; we have no obligation to apply for or furnish bonds;

d) up to $150 per day for loss of wages and salary, when we ask **you** to attend trials and hearings;

e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
At **your** request, we will pay up to $500 each time an **insured person** causes **property damage** to someone else's property. At **our** option, we will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

We will not pay for **property damage:**

a) to property covered under **Section I** of this policy;

b) to property intentionally damaged by an **insured person** who has attained the age of 13;

c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or

d) arising out of:

1) past or present **business** activities;

2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or

3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## *Section II Conditions*

1. **What You Must Do After An Accidental Loss**
In the event of **bodily injury** or **property damage, you** must do the following:

a) Promptly notify **us** or **our** agent stating:

1) **your** name and policy number;

2) the date, the place and the circumstances of the loss;

3) the name and address of anyone who might have a claim against an **insured person;**

4) the names and addresses of any witnesses.

b) Promptly send **us** any legal papers relating to the accident.

c) At **our** request, an insured person will:

1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;

2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person;**

3) attend any hearing or trial.

d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 91 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

Unless **we** are prejudiced by an insured person's failure to comply with the requirements under a) and b) above, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notice, summons or other legal process, shall not bar liability under **Coverage X —Liability Protection** of this policy.

2. **What An Injured Person Must Do —Coverage Y —Guest Medical Protection**
If someone is injured, that person, or someone acting for that person, must do the following:

a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.

## ALLSTATE INDEMNITY COMPANY

    b) Give **us** written authorization to obtain copies of all medical records and reports.

    c) Permit doctors we select to examine the injured person as often as we may reasonably require.

3. **Our Payment Of Loss —Coverage Y —Guest Medical Protection**
We may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Family Liability Protection** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

    **Our** total liability under **Coverage Y —Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the " each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights to Recover Payment —Coverage X —Family Liability Protection**
When we pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount we have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**
    a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there

has been full compliance with all policy terms.

    b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage X —Family Liability Protection**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within two years and one day of such judgment or agreement.

    c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage Y —Guest Medical Protection**, unless such action is commenced within two years and one day after the date the expenses for which coverage is sought were actually incurred.

    d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II —Additional Protection**, unless such action is commenced within two years and one day after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred, or within 2 years and 1 day after the date of loss to the property if coverage is being sought under the **Damage to Property of Others** provision.

    e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

8. **Other Insurance —Coverage X —Family Liability Protection**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

9. **Notice of Settlement of Liability Claim.**
    a. We will notify the **insured person** in writing of any initial offer to compromise or settle a claim against the **insured**

Page 32

ALLSTATE INDEMNITY COMPANY

**person** under the liability section of this policy. We will give the **insured person** notice within 10 days after the date the offer is made.

b. We will notify the **insured person** in writing of any settlement of a claim against the **insured person** under the liability section of this policy. We will give the **insured person** notice within 30 days after the date of the settlement.

## Section III — Optional Protection
## Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage F**
   **Fire Department Charges**
   The $250 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

2. **Coverage JT**
   **Increased Coverage on Theft of Jewelry, Watches and Furs**
   The limitation on theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware or furs under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

3. **Coverage P**
   **Business Pursuits**
   **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover specified **business** pursuits of an insured person.

   **We** do not cover:
   a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured**

**person** when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;

b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;

c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;

d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or

e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

4. **Coverage SD**
   **Satellite Dish Antennas**
   **Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C — Personal Property Protection**.

   The amount of coverage is shown on the Policy Declarations.

Page 33

14.    The insurance contract sold to Plaintiff purports to comply with Tex.Ins.Cd. §863.053 and contains the required provision, word for word. However, Defendant Allstate has steadfastly refused to pay Plaintiff's liquidated total loss claim.

15.    Plaintiff has repeatedly requested that Defendant explain its legal basis for refusing to pay Plaintiff's liquidated claim under the express terms of the policy and as required by state law. In response, Defendant Allstate has only stated that since Plaintiff's home is a manufactured home, Allstate will not pay the stated value. Plaintiff, through Counsel, has requested but not received any legal authority for Allstate's position and basis for ignoring the express terms of the contract and the Texas Insurance code and the contract itself does not have any such exclusion for manufactured homes. In fact, the insurance policy at issue 1) specifically states that it is a "Manufactured Home Policy" and 2) specifically contains the statutory required language liquidating the insurance claim for the full value of the policy limits in the event of a total loss fire claim. See **Exhibit 1.**

### BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

16.    Under Texas law, Defendant Allstate Indemnity Company owes its insured a duty of good faith and fair dealing. *Universal Life Insurance. Co. v. Giles*, 950 S.W.48 (Tex. 1997). Due to the special relationship that exists between an insurance company and its insured, an insurance company is liable for breaching its duty of good faith and fair dealing owed to its insured when an insurance company fails to attempt in good faith

to effectuate a prompt, fair and equitable settlement of a claim when the insurers liability is reasonably clear, as it is in this case.

17.     Defendant Allstate Indemnity Company further breached its duties of good faith and fair dealing by failing and refusing to comply with Texas laws concerning Plaintiff's claims.  Specifically, the Texas Legislature enacted Chapter 542 of the Texas Insurance Code also known as the Unfair Claim Settlement Practices Act to prohibit insurance companies and their representatives from engaging in Unfair Claim Settlement Practices.  The Act mandates that "No insurer doing business in this state under the authority, rules and regulations of this code shall engage in unfair claim settlement practices."

18.     In violation of the Unfair Claim Settlement Practices Act, Defendant Allstate Indemnity Company and its agents, employees and representatives, conducted prohibited acts and practices including, but not limited to, the following:

1.     Knowingly misrepresenting to claimant pertinent facts or policy provisions relating to coverages at issue;

2.     Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policy;

3.     Failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policy;

4.     Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear;

5.     Compelling policyholder to institute suit to recover amounts due under its policy by offering substantially less than the amounts ultimately recovered in suits brought by them; or,

6.   Failure of any insurer to maintain information required by §542.005.  Thus, due to Defendant Allstate Indemnity Company's breach of the duty of good faith and fair dealing and Defendant's failure and refusal to pay Plaintiff's claim(s), Plaintiff has incurred actual damages, including:

1.   All benefits owed under the policy;
2.   Additional interest due to the delay in payment of this claim; and
3.   Attorney fees.

## STATUTORY VIOLATIONS OF CHAPTER 541
## OF THE TEXAS INSURANCE CODE

19.   The Texas Legislature enacted Chapter 541 of the Texas Insurance Code to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade practices.  Further, the legislature made it clear that this Act "shall be liberally construed and applied to promote its underlying purposes as set forth in this section." *See* §541.008 of the Texas Insurance Code.

20.   In violation of Chapter 541 of the Texas Insurance Code, Defendant knowingly[2] and intentionally engaged in unfair methods of competition and unfair and deceptive acts or practices in the business of insurance by engaging in Unfair Settlement Practices with respect to a claim by an insured or beneficiary including, but not limited to:

---

[1]   Under Article '541.002 of the Texas Insurance Code, **"Knowingly"** means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim under Subchapter D is based.  "Actual awareness" may be inferred if objective manifestations indicate that a person acted with actual awareness.

1.  Misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

2.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

    A)  a claim with respect to which the insurer's liability has become reasonably clear;

    B)  a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;

3.  Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

4.  Failing within a reasonable time to affirm or deny coverage of a claim;

## MISREPRESENTATION OF INSURANCE POLICY

21.  Further, pursuant to §541.061 of the Texas Insurance Code, Defendant has engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance to misrepresent an insurance policy by:

1.  making an untrue statement of material fact;

2.  failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

3.  making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; or

4.  making a material misstatement of law.

## VIOLATIONS OF THE TEXAS ADMINISTRATION CODE

22.    Section 28.201 *et seq.* of the Texas Administrative Code provides that "No insurer shall engage in unfair claim settlement practices." Plaintiff alleges that Defendant engaged in unfair claim settlement practices violating the following subsections of the Texas Administration Code:

(1)    misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(2)    failing to adopt and implement reasonable standards for prompt investigation of claims arising under their policies;

(3)    not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear;

(4)    compelling policy holders to institute suits to recover amounts due under their policies by offering substantially less than the amounts ultimately recovered in suits brought by them;

.....

(6)    failing to provide promptly to a policyholder a  reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(7)    undertaking to enforce a full and final release from a policyholder when, in fact, only a partial payment has been made; and,

(8)    refusing to pay claims without conducting a reasonable investigation based upon available information.

23.    Plaintiff would show that Defendant Allstate Indemnity Company's employees were at all applicable times a "person" as that term is defined in section 541.002 of the Texas Insurance Code and that all or part of Defendant's violations

described herein were committed by and through its employees and other currently unknown employees and agents.

## STATUTORY VIOLATIONS
## OF TEXAS INSURANCE CODE 542.051 - 542.061

24.   In the processing of Plaintiff's claims, Defendant Allstate Indemnity Company knowingly and intentionally violated Texas Insurance Code §542.055 - §542.058.  Because Defendant is 1) liable to Plaintiff for a claim under the insurance policy and 2) not in compliance with this subchapter, the insurer [Defendant] is "liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney fees." If a suit is filed, the attorney fees shall be taxed as part of the costs in the case.  Plaintiff further asserts that Defendant is liable for a separate 18% penalty for each separate violation of this subchapter.

## REMEDIES ARE NOT EXCLUSIVE

25.   Further, pursuant to  §542.061 of the Texas Insurance Code, the remedies provided by this subchapter are in addition to any other remedy or procedure provided by law or at common law.

## DECEPTIVE TRADE PRACTICE CLAIMS

26.  Daphne Noble Free purchased a policy of insurance and paid valuable consideration in the form of premiums to Defendant Allstate Indemnity Company for protection and for coverage in the event of a loss.  As a consumer, Daphne Noble Free is

entitled to the protections afforded by the Texas Legislature. Specifically, the legislature enacted the Texas Deceptive Trade Practice - Consumer Protection Act (DTPA) which requires that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."

27.    Pursuant to the D.T.P.A., it is unlawful to engage in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. Defendant Allstate Indemnity Company and its agents, employees, and representatives have knowingly and intentionally engaged in false, misleading, or deceptive acts or practices including, but not limited to, the following:

1.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not;

2.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

3.    Advertising goods or services with intent not to sell them as advertised;

4.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve or which are prohibited by law; and,

28.    Pursuant to §17.50 of the D.T.P.A., Daphne Noble Free to her detriment, relied upon the statements, representations and warranties of Defendant Allstate Indemnity Company, its agents, employees or representatives in deciding to purchase

insurance with Defendant as well as initially trusting Defendant to properly and timely handle her claims.  Moreover, the actions and the course of action of Defendant, its agents, employees and representatives have been unconscionable, including but not limited to the use or employment of acts or practices in violation of Chapter 541 and 542 of the Texas Insurance Code which have been and continue to be a producing cause of economic damages and mental anguish suffered by Plaintiff.  As such, Plaintiff is entitled to maintain an action against Defendant as well as its agents, employees and representatives for such prohibited acts or practices.  Plaintiff seeks recovery of all damages allowed by law for Defendant's violation of the D.T.P.A. including all actual damages owed under the policy, mental anguish, treble damages, attorney fees, pre and post judgment interests and costs of court.

## ATTORNEY FEES

29.    As a result of Allstate Indemnity Company's action(s) complained of in this Petition, Plaintiff was required to engage the services of the law firm of MIKE LOVE & ASSOCIATES, L.L.C., and in order of this Declaratory Judgment Action.   Plaintiff, therefore, seeks reimbursement of reasonable attorney fees pursuant to CH 37 CPRC, Ch. 542 Insurance Code and the DTPA.

## REQUEST FOR JURY TRIAL

30.     Plaintiff respectfully asserts her right to trial by jury.

## REQUEST FOR DISCLOSURE

31.     Under TEXAS RULE OF CIVIL PROCEDURE 194, Plaintiff requests that

Defendant disclose, within 50 days of the service of this request, the information or

material described in Rule 194.2(a)-(l).

## PRAYER

32.     For these reasons, Plaintiff, Daphne Noble Free, asks that the Court issue

citation for Defendant, Allstate Indemnity Company, to appear and answer, and that

Plaintiff be awarded a judgment against Defendant for the following:

   a.     Actual damages.
   b.     Prejudgment and postjudgment interest;
   c.     Statutory damages;
   d.     Attorney fees;
   c.     Court costs; and,
   d.     All other relief to which Plaintiff is entitled.


                                Respectfully submitted,

                                **MIKE LOVE & ASSOCIATES, L.L.C.**
                                202 E. Lufkin Ave.
                                Lufkin, Texas  75901
                                Tel. 936.632.2000
                                Fax. 936.632.2005

                                By: _____

                                   Mike Love
                                   State Bar No. 24004778
                                   Sam Johnson
                                   State Bar No. 24047672
                                   mikelove@texaslawoffice.com
                                   sam.johnson@texaslawoffice.com
                                   *ATTORNEYS FOR PLAINTIFF*
                                   *DAPHNE NOBLE FREE*



Claim# 0373123686

To Whom It May Concern:

I, Patricia Torres _____, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of 06/18/2015 _____. The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this _____26th_____ day of _____June_____2015, before me personally

appeared _Patricia Torres_ to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

_____
Notary Public

MARY PERL
Notary Public, State of Texas
My Commission Expires
October 17, 2015

G52-3


You're in good hands.

Joe Hancock
609 S John Redditt
Lufkin TX 75904

Information as of January 9, 2015

Policyholder(s)                    Page 1 of 3
**Daphne Noble**

Policy number
916 696 485

Your Allstate agency is
**Joe Hancock**
(936) 634-4451
JosephHancock@allstate.com

DAPHNE NOBLE
366 QUINCY RD
POLLOK TX 75969-4118

## Thank You for Being a Loyal Allstate Customer—We're Happy to Have You with Us!

Here's your Manufactured Home insurance renewal offer for the next 12 months. We've also included a guide to what's in this package and answers to some common questions.

### Renewing your policy is easy

Keep an eye out for your bill, which should arrive in a couple of weeks. Just send your payment by the due date on your bill.

If you're enrolled in the Allstate Easy Pay Plan, you won't receive a bill—we'll send you a statement with your payment withdrawal schedule.

You also won't receive a bill if a mortgage company or lienholder pays your insurance premium for you.

### We made some changes to your policy

As you review these materials, you may notice that we made some changes to your policy:

- For this renewal, we re-estimated your property's Actual Cash Value, which is based on factors such as repair and labor costs, and any depreciation related to your insured property. If the Actual Cash Value of your home changed, the amounts of your Dwelling, Other Structures and Personal Property (Contents) Coverages may have changed as well. You can review any changes to your coverage amounts in the

*(continued)*



Policy number: **916 696 485**                                Page 2 of 3
Policy effective date: February 24, 2015
Your Allstate agency is    Joe Hancock
                           (936) 634-4451

enclosed Policy Declarations. Also, you have the option to increase the amount of coverage for your Other Structures and Personal Property (Contents) if needed.

* We changed the name of your policy from "Actual Cash Value" to "Silver Feature."
* We changed the way we determine premiums in your state to better match the coverage we provide with your premium.
* And we're introducing new discounts.

These changes *may* cause a change in your premium, which is shown in the enclosed Policy Declarations. Of course, any recent changes you've made to your policy could have also affected your premium amount.

## Other policy options are now available
In the unfortunate event of a total loss, your Silver Feature policy provides a claim settlement based on Actual Cash Value, which considers the depreciated value of your home. We now offer a Gold Feature policy with Agreed Value Limit, which you can select from a range of coverage limits. Please contact us if you would like more information about the Gold Feature policy and Agreed Value option.

## How to contact us
Give your Allstate representative a call at (936) 634-4451 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

*Steven P. Sorenson*

Steven P. Sorenson
President, Allstate Indemnity Company

RP27-1

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



Page 3 of 3

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the *guide to your welcome package* below for the documents that are included. *Next steps:* review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. *Next steps:* please pay the minimum amount by the due date listed on it. You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) with questions about your coverage, or to update your coverages, limits or deductibles. Or visit us online at allstate.com.

## A guide to your renewal package







**Policy Declarations**
The Policy Declarations lists policy details, such as your property details and coverages.

**Policy Endorsements**
If changes are made to your policy, these documents will include your new contract language.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.



060 032 042
1501050032234
11000050032234064T7X0o015011004692500252000320i6023718

# Renewal Manufactured Home Policy Declarations

  

Platinum   Gold   Silver



You're in good hands.

Your policy effective date is February 24, 2015

Page 1 of 3

## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Premium for property insured | $1,281.63 |
| **Total** | **$1,281.63** |

*If you do not pay in full, you will be charged an installment fee(s). Refer to your bill for installment fee information.*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | 2% | Multiple Policy | 15% |

## Location of property insured

366 Quincy Dr, Pollok, TX 75969-4118

## Insured manufactured home

| Manufacturer | Serial No. | Year |
|---|---|---|
| WALDEN | 2319663AB | 1994 |

## Rating Information

Please review and verify the information regarding your insured property. Please refer to the Estimated Home Replacement Cost Important Notice (X67678-1) for additional coverage information. Contact us if you have any changes.

The dwelling is tied down.

Out of park

**Dwelling Style:**
Built in 1994; 1 family; 1568 sq. ft.; multi-wide - 1 Story; condition - Satisfactory

**Foundation:**
100% Pier foundation

**Interior details:**
One basic kitchen                    Two basic full baths

**Exterior wall type:**
100% hardboard siding

**Heating and cooling:**
Average cost central air conditioning, 100%

*(continued)*

---

Information as of January 9, 2015

## Summary

Named Insured(s)
**Daphne Noble**

Mailing address
**366 Quincy Dr**
**Pollok TX 75969-4118**

Policy number
**916 696 485**

Your policy provided by
**Allstate Indemnity Company**

Policy period
Begins on **February 24, 2015** through **February 24, 2016** at 12:01 a.m. standard time, with no fixed date of expiration

Premium period
Beginning **February 24, 2015** through **February 24, 2016** at 12:01 a.m. standard time

Your Allstate agency is
**Joe Hancock**
609 S John Redditt
Lufkin TX 75904
(936) 634-4451
JosephHancock@allstate.com

Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.

TX032R8D 02/14



Renewal Manufactured Home Policy Declarations
Policy number:            916 696 485
Policy effective date:    February 24, 2015
Your Allstate agency is   Joe Hancock
                          (936) 634-4451

## Rating Information (continued)

**Additional details:**
Horizontal vinyl skirting, 100%          Vinyl flooring, 10%
Wall to wall carpet flooring
(acrylic/nylon), 90%

**Fire protection details:**
4 miles to fire department               499 ft. to fire hydrant

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

## Mortgagee / Lienholder

JPMORGAN CHASE BANK NA ITS SCRS &/OR ASSIGNS ATIMA
P O Box 47020, Doraville, GA 30362-0020
Loan number: 1505128761

## Additional Interested Party

None

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | Actual cash value up to $50,320 | • $500 All peril |
| Other Structures Protection | Actual cash value up to $5,032 | • $500 All peril |
| Personal Property Protection | Actual cash value up to $34,872 | • $500 All peril |
| Civil Authority Protection | $100 per day | |
| Foundation Water Damage | $5,000 | |
| Additional Living Expense | Up to 6 months not to exceed $10,064 | |
| Family Liability Protection | $50,000 each occurrence | |
| Guest Medical Protection | $1,000 each person<br>$25,000 each occurrence | |

TX032RBD 02/14

060032042
1501050002234
11006005010232410601X0001501004592500264900301602371B

Renewal Manufactured Home Policy Declarations
Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



**Allstate.**
You're in good hands.

Page 3 of 3

## Your policy documents

Your Manufactured Home policy consists of the Policy Declarations and the following documents. Please keep them together.

- Manufactured Home Policy – AS231
- Amendatory Endorsement – AP4830

- Texas Amendatory Endorsement – AS321-1
- Texas Manufactured Home Policy Actual Cash Value Loss Settlement Endorsement – AS467

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ Do not pay. Mortgagee has been billed.

Allstate Indemnity Company's Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Steven P. Sorenson
President

Susan L. Lees
Secretary



TX032RBD 02/14



## Policy Endorsement

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



You're in good hands.

*The following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Texas Manufactured Home Policy—
## Actual Cash Value Loss Settlement
## Endorsement – AS467

I.   In **Section I—Your Property**, under the **Additional
     Protection** section, the **Debris Removal** provision is
     replaced by the following:

3.   **Debris Removal**
     We will pay reasonable expenses **you** incur to remove
     debris of covered property damaged by a loss **we**
     cover. If the loss to the covered property and the cost
     of debris removal are more than the actual cash value
     of the covered property, **we** will pay up to an
     additional $2,500 for the debris removal.

II.  The following changes are made under **Section I
     Conditions**:

A.   The **How We Pay For A Loss** provision is replaced by
     the following:

5.   **How We Pay For A Loss**
     a)  Loss to property insured by this policy under
         **Dwelling Protection–Coverage A and Other
         Structures Protection–Coverage B** will be
         settled on an actual cash value basis. This
         means there may be a deduction for
         depreciation. Payment will not exceed the
         smallest of:
         1)  the actual cash value of the damaged,
             destroyed or stolen property at the time
             of loss;
         2)  the amount necessary to repair or
             replace the damaged, destroyed or stolen
             property with other of like kind and
             quality; or
         3)  the limit of liability applicable to the
             damaged, destroyed or stolen property
             regardless of the number of **building
             structures** or other structures involved in
             the loss.

         Payment will not include any increased cost
         due to the enforcement of building codes,

ordinances or laws regulating the
construction, reconstruction, maintenance,
repair, relocation or demolition of **building
structures** or other structures.

b)  Loss to property insured by this policy under
    **Personal Property Protection–Coverage C**
    will be settled as follows:
    1)  If **you** do not repair or replace the
        damaged, destroyed or stolen property,
        payment will be on an actual cash value
        basis. This means there may be a
        deduction for depreciation. Payment will
        not exceed the limit of liability shown on
        the Policy Declarations for the coverage
        that applies to the damaged, destroyed
        or stolen property, regardless of the
        number of items involved in the loss.

        **You** may make claim for additional
        payment as described in paragraph 2)
        below if applicable, if **you** repair or
        replace the damaged, destroyed or stolen
        covered property within 365 days of the
        actual cash value payment unless **you**
        request in writing that this time limit be
        extended for an additional 180 days.

    2)  Personal Property Reimbursement. When
        the Policy Declarations shows that the
        Personal Property Protection—
        Reimbursement Provision applies under
        **Personal Property Protection–Coverage
        C, we** will make additional payment to
        reimburse **you** for cost in excess of actual
        cash value if **you** repair, rebuild or
        replace damaged, destroyed or stolen
        covered personal property or wall-to-wall
        carpeting within 365 days of the actual
        cash value payment unless **you** request in
        writing that this time limit be extended
        for an additional 180 days.

        Personal Property Reimbursement
        payment will not exceed the smallest of
        the following amounts:
        i)   the amount actually and necessarily
             spent to repair or replace the
             property with similar property of like
             kind and quality;
        ii)  the cost of repair or restoration; or



Policy endorsement
Policy number:      916 696 485
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
(936) 634-4451

iii)  the limit of liability shown on the
Policy Declarations for **Personal
Property Protection–Coverage C**, or
any special limit of liability described
in the policy, regardless of the
number of items of personal property
involved in the loss.

Personal Property Reimbursement will be
limited to the difference between any
actual cash value payment made for the
covered loss to personal property and the
smallest of 2)i), ii) or iii) above.

Personal Property Reimbursement will
not apply to:
i)   property insured under **Dwelling
Protection–Coverage A** and **Other
Structures Protection–Coverage B**,
except wall-to-wall carpeting;
ii)  antiques, fine arts, paintings,
statuary and similar articles which,
by their inherent nature, cannot be
replaced;
iii) articles whose age or history
contribute substantially to their
value. This includes, but is not
limited to memorabilia, souvenirs
and collector's items; or
iv)  property that was obsolete or
unusable for the originally intended
purpose because of age or condition
prior to the loss.

B.  The provision titled **Property Insurance Adjustment** is
deleted.

All other policy terms and conditions will apply. However, no
other **How We Pay For A Loss** provisions in any other policy
forms apply.

040 032 042
150105002234
2100000500223406G0TK0D0150110046925002520005016023718

## Policy Endorsement

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451


**Allstate.**
You're in good hands.

Page **1** of 2

*The following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Texas Amendatory Endorsement – AS321-1

I. In the **General** section, the **Cancellation** provision is
replaced by the following:

**Cancellation**
1. **You** may cancel this policy at any time by notifying **us**
   of the date cancellation is to take effect. **We** will send
   **you** any refund due when the policy is returned to **us**
   not later than the 15th business day after the effective
   date of the cancellation.

2. If this policy has been in effect for less than 60 days
   and is not a renewal policy **we** may cancel this policy
   if:
   a) **we** identify a condition that:
      1) creates an increased risk of hazard;
      2) was not disclosed in the application for
         insurance coverage; and
      3) is not the subject of a prior claim; or
   b) before the effective date of the policy, we have
      not accepted a copy of a required inspection
      report that:
      1) was completed by an inspector licensed by
         the Texas Real Estate Commission or who is
         otherwise authorized to perform inspections;
         and
      2) is dated not earlier than the 90th day before
         the effective date of the policy.

   An inspection report is deemed accepted unless
   **we** reject it before the 11th day after the report is
   received by **us**.

3. **We** may also cancel this policy at any time for any of
   the following reasons:
   a) **you** do not pay the premium or any portion of the
      premium when due.
   b) the Department of Insurance determines that
      continuation of the policy would violate the Texas
      Insurance Code or any other laws governing the
      business of insurance in this state.
   c) **you** submit a fraudulent claim.
   d) there is an increase in the hazard covered by this
      policy that is within **your** control and that would

produce an increase in the premium rate of this
policy.

4. The effective date of cancellation cannot be before the
   10th day after **we** mail the notice if **we** cancel for any
   of the reasons in paragraph 3, or the 30th day after **we**
   mail notice if **we** cancel for any other reason. **Our**
   notice of cancellation must state the reason for
   cancellation.

5. If **we** cancel, **our** notice to **you** will state that if the
   refund is not included with the notice, it will be
   returned not later than the 15th business day after the
   effective date of the cancellation.

6. **We** may not cancel this policy solely because **you** are
   an elected official.

II. In **Section I Additional Protection**, item 1., **Additional
Living Expense** is replaced by the following:

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses
   necessary to maintain **your** normal standard of living
   when a direct physical loss **we** cover under **Dwelling
   Protection–Coverage A, Other Structures Protection–
   Coverage B** or **Personal Property Protection–
   Coverage C** makes **your residence premises**
   uninhabitable. However, additional living expense due
   to **remediation** of mold, fungus, wet rot or dry rot will
   not be paid in addition to any amounts paid or payable
   under **Section I Conditions, Mold, Fungus, Wet Rot
   And Dry Rot Remediation As A Direct Result Of A
   Covered Water Loss.**

   Payment for covered additional living expense as a
   result of a covered loss under **Dwelling Protection–
   Coverage A, Other Structures Protection–Coverage B**
   or **Personal Property Protection–Coverage C** will be
   limited to the least of the following:
   a) the time period required to repair or replace the
      property **we** cover, using due diligence and
      dispatch;
   b) if **you** permanently relocate, the shortest time for
      **your** household to settle elsewhere; or
   c) six consecutive months from the time of loss.

   In no event shall **our** payment for additional living
   expenses exceed the amount shown on **your** Policy
   Declarations for **Additional Living Expense.**



Policy endorsement
Policy number:  **916 696 485**
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
(936) 634-4451

The periods of time referenced above are not limited
by the termination of this policy.

No deductible applies to this protection.

III. In **Section I Conditions**, under item 5., **How We Pay For A
Loss**, the first paragraph of Item d) is replaced by the
following:

d)  Personal Property Reimbursement. When the Policy
Declarations shows that the Personal Property
Reimbursement provision applies under **Personal
Property Protection–Coverage C, we** will make
additional payment to reimburse you for cost in
excess of actual cash value if **you** repair, rebuild or
replace damaged, destroyed or stolen covered
personal property or wall-to-wall carpeting within
365 days of the actual cash value payment unless **you**
request in writing that this time limit be extended for
an additional 180 days.

All other policy terms and conditions apply.

060 032 042
150105002234
21D000050722406017X0001S011004925002520006016023718

## Important notices

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



Allstate.
You're in good hands.

Page 1 of 13

### Your Property Is Covered On an Actual Cash Value Basis

We'd like to remind you that your policy provides actual cash value coverage. So if you experience a covered loss, we will pay for a loss to your covered property on an actual cash value basis, meaning there may be a deduction for depreciation.

The estimated actual cash value for your property is the estimated limit assigned to your policy when it was first written, and was based on data that was available to us at the time the estimate was made. This includes dwelling details such as the interior and exterior of each room, additional structures, heating and cooling, as well as additional options. Keep in mind, however, the actual amount it will cost to repair or replace your property cannot be known until after a covered total loss has occurred.

More information about the characteristics that were used in this estimate is provided in the "Rating Information" section of your Policy Declarations.

If this information requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative.

X6767B-1

### Notice of Changes to Your Manufactured Home Policy

From time to time Allstate will revise your coverage. We've included an Amendatory Endorsement (#AS321-1) in this mailing package that changes parts of your contract. Please read this endorsement and keep it with your Manufactured Home policy.

We're also providing you with the following summary. We hope you find it informative and useful, but keep in mind that it's not part of your contract. Always reference your policy documents for your exact coverage details.

If you have any questions about this notice or your policy coverage, you can contact your Allstate representative, call 1-800-ALLSTATE℠ (1-800-255-7828), or visit www.allstate.com. We're here to help!

### Summary Of Changes

We have updated the **Additional Living Expense** provision under **Section I Additional Protection**. We have added a maximum dollar limit for this coverage as displayed on your Policy Declarations. In addition, we have extended the time for which additional living expenses are available from three months to six months, subject to the dollar limit shown on your Policy Declarations.

We have removed coverage for lost fair rental income.

We have updated the **How We Pay For A Loss** provision under **Section I Conditions**. We will reimburse you above the actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 365 days of the actual cash value payment unless you request in writing that this time limit be extended for an additional 180 days.

XC3502

### Notice of Changes to Your Manufactured Home Policy

From time to time Allstate will revise your coverage. We've included an Amendatory Endorsement (#AS467) in this mailing package that changes parts of your contract. Please read this endorsement and keep it with your Manufactured Home policy.

We're also providing you with the following summary. We hope you find it informative and useful, but keep in mind that it's not part of your contract. Always reference your policy documents for your exact coverage details.

If you have any questions about this notice or your policy coverage, you can contact your Allstate representative, call 1-800-ALLSTATE℠ (1-800-255-7828), or visit www.allstate.com. We're here to help!

### Summary Of Changes

**How We Pay For A Loss–Coverages A and B**

We have changed the **How We Pay For A Loss** provision for loss to property under Coverage A and Coverage B.



Important notices
Policy number:          916 696 485
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
                          (936) 634-4451

For item a) 3), we have added that payment will not exceed the limit of liability applicable to the damaged, destroyed or stolen property "regardless of the number of **building structures** or other structures involved in the loss."

We have also added: "Payment will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures."

### How We Pay For A Loss—Coverage C

Customers now have the option to select Personal Property Reimbursement for Coverage C. If Personal Property Reimbursement is selected, customers will be reimbursed for the cost in excess of actual cash value if the damaged, destroyed or stolen property or wall-to-wall carpeting is repaired, rebuilt or replaced within 365 days of the actual cash value payment, subject to the exclusions and limits described in the Actual Cash Value Loss Settlement Endorsement.

If Personal Property Reimbursement is not selected, losses to items under Coverage C will be settled on an actual cash value basis as described.

**How We Pay For A Loss—Coverages A, B and C**

No other **How We Pay For A Loss** provisions in any other policy forms apply.

XC3505

## What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

### You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you,

over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

### Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

X73168

## Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

*   No deductibles to meet
*   Coverage for lost or damaged items

060 032 042
151103500223434
Z700000050223434060T X0001501100049250026460007016022718

Important notices
Policy number:                916 696 485
Policy effective date:    February 24, 2015
Your Allstate agency is   Joe Hancock
                          (936) 634-4451



You're in good hands.

- Coverage for valuables kept in a storage location outside your home

## Items That May Need the Extra Protection

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

## Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

## Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

X73169

## Consumer Bill Of Rights Homeowners, Dwelling & Renters Insurance

AVISO: Este documento es un resumen de sus derechos como asegurado. Usted tiene el derecho a llamar a su compañía y pedir una copia de estos derechos en español.

## What is the Bill of Rights?

This Bill of Rights is a summary of your rights and does not become a part of your policy. The Texas Department of Insurance (TDI) adopted the Bill of Rights and requires insurance companies to provide you a copy when they issue your policy.

Texas law gives you certain rights regarding your homeowners, dwelling and renters insurance. This Bill of Rights identifies your rights specified by rule or by state statute, but it does not include all your rights. Also, some exceptions to the rights are not listed here. Legislative or regulatory changes to statutes or rules may affect your rights as an insured. If your agent, company, or adjuster tells you that one of these rights does not apply to you, contact TDI's Consumer Protection Program at 1-800-252-3439 (463-6515 in Austin), by mail at Mail Code 111-1A, P.O. Box 149091, Austin, TX 78714-9091, or by email at *ConsumerProtection@tdisstate.tx.us*. For a list of the specific law(s) and/or rule(s) summarized in each item of this Bill of Rights, or if you have questions or comments contact the Office of Public Insurance Counsel (OPIC) toll free at 1-877-611-6742, by mail at 333 Guadalupe, Suite 3-120, Austin, TX 78701, or visit the OPIC website at *www.opic.state.tx.us*.

This Bill of Rights does not address your responsibilities. Your responsibilities concerning your insurance can be found in your policy. Failure to meet your obligations may affect your rights.

### Getting information from the Department of Insurance and your insurance company

1. **INFORMATION FROM TDI.** You have the right to call TDI free of charge at 1-800-252-3439 or 463-6515 in Austin to learn more about:
   - your rights as an insurance consumer;
   - the license status of an insurance company or agent;
   - the financial condition of an insurance company;
   - the complaint ratio and type of consumer complaints filed against an insurance company;
   - use of credit information by insurance companies, including which insurance companies use it and access to each company's credit scoring model;
   - an insurance company's rates filed with the state;



Important notices
Page 4 of 13

Policy number:     **916 696 485**
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
(936) 634-4451

- an insurance company's underwriting guidelines (subject to exemptions in the Public Information Act, also known as the Open Records Act);
- the Texas FAIR Plan, designed to help consumers who have been denied coverage by at least two insurance companies; and
- other consumer concerns.

You can also find some of this information on the TDI website at *www.tdi.texas.gov*.

At *www.helpinsure.com*, Texans can find more detailed information on their current and prospective insurers. TDI, in conjunction with OPIC, maintains this website to help Texans shop for residential property insurance and personal automobile insurance. For companies writing in Texas that are in the top 25 company groups nationally, the site also includes:

- a list of insurers by county and/or ZIP code;
- detailed contact information for each insurer;
- sample rates and a brief history of increases and/or decreases in the rates;
- policy form comparisons;
- a list of policy forms, exclusions, endorsements, and discounts offered by each insurer; and
- non-confidential disciplinary actions against each insurer.

2. **INFORMATION FROM YOUR INSURANCE COMPANY**. You have the right to a toll-free number to call your insurance company free of charge with questions or complaints. You can find this number on a notice accompanying your policy. This requirement does not apply to small insurance companies.

**What you should know before you buy insurance**

3. **PROHIBITED STATEMENTS.** Your insurance company or agent is prohibited from making false, misleading, or deceptive statements to you relating to insurance.

4. **LENDER-REQUIRED INSURANCE.** A lender cannot require you to purchase insurance on your property in an amount that exceeds the replacement cost of the dwelling and its contents as a condition of financing a residential mortgage or providing other financing arrangements for the property, regardless of the amount of the mortgage or other financing arrangements. In determining the replacement cost of the dwelling, a lender cannot include

the fair market value of the land on which a dwelling is located.

5. **CREDIT INFORMATION.** An insurance company cannot deny you insurance solely on the basis of credit information. Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to offer coverage. (For additional information see the section of this Bill of Rights titled *What you should know about insurance companies' use of credit information.*)

6. **APPLIANCE-RELATED WATER DAMAGE CLAIMS.** An insurance company cannot deny you insurance or increase your premium based on a prior appliance-related water damage claim if:

- the damage has been properly repaired or remediated; and
- the repair or remediation was inspected and certified.

NOTE: A company can use an appliance-related water damage claim if you file three or more such claims in a three-year period and the company has paid the claims. A claim includes a claim filed by you or a claim filed on your property.

7. **WATER CLAIMS/MOLD DAMAGE OR CLAIMS.** An insurance company cannot deny you insurance based solely on a single prior water damage claim. An insurance company also cannot deny you insurance because of prior mold damage or a prior mold claim if:

- the damage or claim was properly repaired or remediated; and
- the repair or remediation was inspected and certified.

NOTE: A claim includes a claim filed by you or a claim filed on your property.

8. **PROPERTY CONDITION.** Voluntary Inspection Program: You have the right to have an independent inspection of your property by any person authorized by the Commissioner of Insurance to perform inspections. Once the inspector determines that your property meets certain minimum requirements and issues you an inspection certificate, no insurer may deny coverage based on property conditions without reinspecting your property. If an insurer then denies coverage, the insurer must identify, in writing, the specific problem(s) that makes your property uninsurable. You can find a list of available

060 032 042
1501050002234
210000050022340607200050110045925002640080160237T8

Important notices
Policy number:          **916 696 485**
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
                         (936) 634-4451


**Allstate.**
You're in good hands.

Page 5 of 13

inspectors on the TDI website at *www.tdi.texas.gov/company/vipagnt.html* or you can contact TDI for the list directly at 1-800-252-3439.

9. **SAFETY NET.** You have the right to buy basic homeowners insurance through the Texas Fair Access to Insurance Requirements Plan, also known as the Texas FAIR Plan, if you have been denied coverage by two insurance companies. Your property must meet certain requirements, and eligibility for FAIR Plan coverage must be re-established every two years. You can access a list of insurance agents who are authorized to sell this coverage on the Texas FAIR Plan Association website at *www.texasfairplan.org* or by calling 1-800-979-6440 (505-2200 in Austin).

10. **WINDSTORM COVERAGE.** For property located in areas designated by the Commissioner in certain counties on or near the coast, you may have the right to buy windstorm and hail coverage from the Texas Windstorm Insurance Association (TWIA), if you have been denied windstorm coverage by one insurance company in the standard market currently providing windstorm coverage. Your property must meet certain requirements, and eligibility for TWIA coverage must be re-established every 3 years. You may have to re-establish eligibility sooner than every 3 years if you have made any repairs or alterations to your home. Windstorm coverage through TWIA is limited to a maximum amount set each year by the Commissioner of Insurance. This right applies whether or not you buy other insurance for your house. In all other counties your homeowners or dwelling policy includes windstorm and hail coverage unless you request that this coverage is removed from your policy.

    NOTE: If you live in a certain flood zone (Zone V, Zone VE and Zone V1-130) and your dwelling was constructed, altered, remodeled, or enlarged after September 1, 2009, you must purchase flood insurance through the National Flood Insurance Program (NFIP) in order to be eligible to purchase windstorm coverage through TWIA. However, if NFIP does not provide flood insurance in your area, you are not required to purchase it.

11. **ELECTRONIC PAYMENTS.** If you authorize your insurer to withdraw your premium payments directly from your financial institution, including your escrow account, your insurer cannot increase the amount withdrawn unless:

- the insurer notifies you by U.S. mail of the increase in premium at least 30 days prior to its effective date; and

- you do not notify the insurer that you object to the increase in the amount to be withdrawn at least 5 days prior to the increase.

The notice provided by the insurer must include a toll-free number, a mailing address and an email address (if applicable), through which you can contact the insurer to object to the increase.

NOTE: This does not apply to premium increases specifically scheduled in the original policy, to increases based on policy changes you request, or to an increase that is less than $10 or 10% of the previous month's payment.

12. **NOTICE OF REDUCED COVERAGE.** If an insurer uses an endorsement to reduce the amount of coverage provided by your policy, the insurer must give you a written explanation of the change made by the endorsement. The insurer must provide the explanation not later than the 30th day before the effective date of the new or renewal policy. An insurance company cannot reduce coverage during the policy period unless you request the change. If you request the change, the company is not required to provide notice.

13. **NOTICE OF PREMIUM INCREASE.** If your insurer intends to increase your premium by 10% or more upon renewal, the insurer must send you notice of the rate increase at least 30 days before your renewal date.

14. **EXPLANATION OF DENIAL.** Upon request, you have the right to be told in writing why you have been denied coverage. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

    NOTE: The obligation to provide a written explanation applies to insurance companies directly. An independent agent does not have a specific duty to quote the lowest possible rate to a consumer or to provide a written statement explaining why the agent did not offer the consumer the lowest possible rate.

15. **CUSTOMER INQUIRY.** An insurance company cannot use a customer inquiry as a basis for denying you coverage or determining your premium.



Important notices
Policy number:   916 696 485
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
(936) 634-4451

NOTE: A customer inquiry includes:

* general questions about your policy;

* questions concerning the company's claims filing process; and

* questions about whether the policy will cover a loss unless the question concerns specific damage that has occurred and that results in an investigation or claim.

**16. *RATE DIFFERENTIAL WITHIN A COUNTY.*** If an insurer subdivides a county for the purposes of charging different rates for each subdivision, the difference between the lowest and the highest rate cannot exceed 15% unless actuarially justified.

**17. *RIGHT TO PRIVACY.*** You have the right to prevent an insurance company, agent, adjuster or financial institution from disclosing your personal financial information to companies that are not affiliated with the insurance company or financial institution. Some examples are income, social security number, credit history and premium payment history.

If you apply for a policy, the insurance company or financial institution must notify you if it intends to share financial information about you and give you at least 30 days to refuse. This refusal is called "opting out." If you buy a policy, the insurance company or financial institution must tell you what information it collects about you and whether it intends to share any of the information, and give you at least 30 days to opt out. Agents and adjusters who intend to share your information with anyone other than the insurance company or financial institution must give you similar notices.

You can opt out at any time. Your decision to opt out remains in effect unless you revoke it.

These protections do not apply to information:

* publicly available elsewhere;

* insurance companies or financial institutions are required by law to disclose; or

* insurance companies or financial institutions must share in order to conduct ordinary business activities.

## What you should know about cancellation and nonrenewal

Cancellation means that **before the end** of the policy period the insurance company:

* terminates the policy;

* reduces or restricts coverage under the policy; or

* refuses to provide additional coverage to which you are entitled under the policy.

Refusal to renew and nonrenewal mean the policy terminates **at the end** of the policy period. The policy period is shown on the declarations page at the front of your policy.

**18. *LIMITATION ON CANCELLATION FOR HOMEOWNERS AND RENTERS POLICIES.*** After your initial homeowners or renters policy with your company has been in effect for 60 days or more, that insurance company cannot cancel your policy unless:

* you don't pay your premium when due;

* you file a fraudulent claim;

* there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or

* TDI determines continuation of the policy would result in violation of insurance laws. If your policy has been in effect for less than 60 days, your insurance company cannot cancel your policy unless:

  * one of the reasons listed above applies;

  * the insurance company identifies a condition that:

    * creates an increase in hazard;

    * was not disclosed on your application; and

    * is not the subject of a prior claim; or

    * the insurance company rejects a required inspection report within 10 days after receiving the report. The report must be completed by a licensed or authorized inspector and cannot be more than 90 days old.

**19. *LIMITATION ON CANCELLATION FOR DWELLING POLICIES.*** After your initial dwelling policy with your company has been in effect for 90 days, that insurance company cannot cancel your policy unless:

* you don't pay your premium when due;

* you file a fraudulent claim;

Important notices
Policy number: 916 696 485
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



You're in good hands.

- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or
- TDI determines continuation of the policy would result in violation of insurance laws.

**20. NOTICE OF CANCELLATION.** To cancel your policy, your insurance company must mail notice at least 10 days prior to the effective date of the cancellation. Your policy may provide for even greater notice.

**21. POLICYHOLDER'S RIGHT TO CANCEL.** You have the right to cancel your policy at any time and receive a refund of the remaining premium.

**22. CHANGE IN MARITAL STATUS.** If your marital status changes, you have the right to continue your insurance coverage. You have a right to a new policy in your name that has coverages which most nearly approximate the coverages of your prior policy, including the same expiration date. The insurance company cannot date the new policy so that a gap in coverage occurs.

**23. USE OF CLAIMS HISTORY TO NONRENEW OR DETERMINE RENEWAL PREMIUM.** Your insurance company cannot use claims you filed as a basis to non-renew your policy unless:

- you file three or more claims in any 3-year period; and
- your insurer notified you in writing after the second claim that filing a third claim could result in nonrenewal of your policy.

Your insurance company cannot use the following types of claims to determine the number of claims you have filed or to determine the premium if your policy is renewed:

- claims for damage from natural causes, including weather-related damage;
- appliance-related water damage claims where the repairs have been inspected and certified; or
- claims filed but not paid or payable under the policy.

NOTE: An insurance company can count appliance-related claims if 3 or more such claims are filed and paid within a 3-year period.

**24. USE OF CREDIT INFORMATION TO NONRENEW.** An insurance company cannot refuse to renew your policy solely on the basis of credit information. Insurers who use credit information must also consider other underwriting

factors independent of credit information when deciding whether to renew coverage. (For additional information see the section of this Bill of Rights entitled *What you should know about insurance companies' use of credit information.*)

**25. NOTICE OF CHANGE IN POLICY FORM.** Your insurer must notify you in writing of any difference between your current policy and each policy offered to you when the policy renews. In certain instances your insurance company must provide a comparison between the policy offered and the policies adopted by the Commissioner of Insurance.

**26. NOTICE OF NONRENEWAL.** If the insurance company does not mail you notice of nonrenewal at least 30 days before your policy expires, you have the right to require the insurance company to renew your policy.

**27. EXPLANATION OF CANCELLATION OR NONRENEWAL.** Upon request, you have the right to a written explanation of an insurance company's decision to cancel or nonrenew your policy. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

**What you should know when you file a claim**

**28. FAIR TREATMENT.** You have the right to be treated fairly and honestly when you make a claim. If you believe an insurance company has treated you unfairly, call the TDI at 1-800-252-3439 (463-6515 in Austin) or download a complaint form from the TDI website at *www.tdi.texas.gov.* You can complete a complaint form on-line via the Internet or fax a completed form to TDI at 512-475-1771.

**29. SETTLEMENT OFFER.** You have the right to reject any settlement amount, including any unfair valuation, offered by the insurance company. You have the right to have your home repaired by the repair person of your choice.

**30. EXPLANATION OF CLAIM DENIAL.** Your insurance company must tell you in writing why your claim or part of your claim was denied.

**31. TIMEFRAMES FOR CLAIM PROCESSING AND PAYMENT.** When you file a claim on your own policy, you have the right to have your claim processed and paid promptly. If the insurance company fails to meet required claims processing and payment deadlines, you have the right to



Important notices
Policy number:    916 696 485
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
(936) 634-4451

collect 18% annual interest and attorney's fees in addition to your claim amount.

Generally, within **15 calendar days**, your insurance company must acknowledge receipt of your claim and request any additional information reasonably related to your claim. Within **15 business days** (30 days if the company reasonably suspects arson) after receipt of all requested information, the company must approve or deny your claim in writing. The law allows the insurance company to extend this deadline up to **45 days** if it notifies you that more time is needed and tells you why.

After notifying you that your claim is approved, your insurance company must pay the claim within **5 business days**.

If your claim results from a weather-related catastrophe or other major natural disaster as defined by TDI, these claims handling deadlines are extended for an additional 15 days.

32. *RELEASE OF CLAIM FUNDS.* Often an insurance company will make a claim check payable to you and your mortgage company or other lender and will send it to the lender. In that case, the lender must notify you within 10 days of receipt of the check and tell you what you must do to get the funds released to you.

Once you request the funds from the lender, within 10 days the lender must:

- release the money to you; or
- tell you in specific detail what you must do to get the money released.

If the lender does not provide the notices mentioned above or pay the money to you after all requirements have been met, the lender must pay you interest on the money at 10% per year from the time the payment or the notices were due.

33. *NOTICE OF LIABILITY CLAIM SETTLEMENT.* Your insurance company must notify you if it intends to pay a liability claim against your policy. The company must notify you in writing of an initial offer to compromise or settle a claim against you no later than the 10th day after the date the offer is made. The company must notify you in writing of any settlement of a claim against you no later than the 30th day after the date of the settlement.

34. *INFORMATION NOT REQUIRED FOR CLAIM PROCESSING.* You have the right to refuse to provide your insurance

company with information that does not relate to your claim. In addition, you may refuse to provide your federal income tax records unless your insurer gets a court order or your claim involves lost income or a fire loss.

## What you should know about prohibited discrimination

35. *PROTECTED CLASSES.* An insurance company cannot discriminate against you by refusing to insure you; limiting the amount, extent or kind of coverage available to you; charging you a different rate for the same coverage; or refusing to renew your policy:

- because of race, color, religion, gender, marital status, disability or partial disability, or national origin; or
- unless justified by actual or anticipated loss experience, because of age or geographic location.

36. *AGE OF HOUSE.* An insurance company cannot refuse to insure your property based on the age of your house. However, an insurance company may refuse to sell you insurance coverage based on the condition of your property, including the condition of your plumbing, heating, air conditioning, wiring and roof.

37. *VALUE OF PROPERTY.* An insurance company cannot refuse to insure your property because the value is too low or because the company has established minimum coverage amounts.

38. *UNDERWRITING GUIDELINES.* Underwriting guidelines may not be unfairly discriminatory and must be based on sound actuarial principles.

39. *EQUAL TREATMENT.* Unless based on sound actuarial principles, an insurance company may not treat you differently from other individuals of the same class and essentially the same hazard. If you sustain economic damages as a result of such unfair discrimination, you have the right to sue that insurance company in Travis County District Court.

If your suit prevails, you may recover economic damages, court costs and attorney and necessary expert witness fees. If the court finds the insurance company knowingly violated your rights, it may award up to an additional $25,000 per claimant.

You must bring the suit on or before the second anniversary of the date you were denied insurance or the unfair act occurred or the date you reasonably should have

Important notices
Policy number: **916 696 485**
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
(936) 634-4451



You're in good hands.

Page 9 of 13

discovered the occurrence of the unfair act. If the court determines your suit was groundless and you brought the lawsuit in bad faith, or brought it for the purposes of harassment, you will be required to pay the insurance company's court costs and attorney fees.

## What you should know about insurance companies' use of credit information

40. *REQUIRED DISCLOSURE.* If an insurance company uses credit information to make underwriting or rating decisions, the company must provide you a disclosure statement within 10 days after receiving your completed application for insurance.

The disclosure indicates whether the insurer will obtain and use your credit information and lists your specific legal rights, including:

- credit information insurance companies cannot use against you;

- how you can get reasonable exceptions that your insurer is required to make to its use of credit information if certain life events, such as divorce, death of a close family member, or identity theft, hurt your credit;

- the notice* an insurer must send you when making a credit-based decision that harms your ability to get or keep insurance or requires you to pay a higher premium; and

- how you can dispute credit information and require an insurer to re-rate your policy if the rate was increased because of inaccurate or unverifiable credit information.

* The notice must include a description of up to four primary factors that influenced the action taken by the insurer.

Insurers must use the disclosure form (CD-1) adopted by the Commissioner or an equivalent disclosure form filed prior to use with TDI. The CD-1 is available at *www.tdi.texas.gov/forms/pcpersonal/pc328crdtds.pdf* or by calling 1-800-252-3439. Additional information regarding insurers' use of credit information is available at *www.tdi.texas.gov/credit/credit.html*.

## What you should know about enforcing your rights

41. *FILING COMPLAINTS.* You have the right to complain to TDI about any insurance company and/or insurance

matter and to receive a prompt investigation and response to your complaint. To do so, you should:

- call TDI's *Consumer Help Line* at 1-800-252-3439, (463-6515 in Austin) for service in both English and Spanish;

- write to the Texas Department of Insurance, Consumer Protection, Mail Code 111-1A, P.O. Box 149091, Austin, Texas 78714-9091;

- e-mail TDI at *ConsumerProtection@tdi.state.tx.us*;

- fax your complaint to 512-475-1771;

- download or complete a complaint form on line from the TDI website at *www.tdi.texas.gov*; or

- call the TDI Publications/Complaint Form order line at 1-800-599-SHOP (7467), (512-305-7211 in Austin). The order line is available 24 hours a day, 7 days a week.

NOTE: TDI offers interpreter services and publications in alternate formats. Persons needing more information in alternate layouts or languages can call the TDI *Consumer Help Line* listed above.

42. *RIGHT TO SUE.* If an insurance company violates your rights, you may be able to sue that company in court, including small claims court, with or without an attorney.

43. *BURDEN OF PROOF.* If you sue to recover under your insurance policy, the insurance company has the burden of proof as to any application of an exclusion in the policy and any exception to or other avoidance of coverage claimed by the insurer.

44. *REQUESTING NEW RULES.* You have the right to ask in writing that TDI make or change rules on any residential property insurance issue that concerns you. Send your written request to: Texas Department of Insurance, Attn: Commissioner (113-2A), P.O. Box 149104, Austin, TX 78714-9104.

X4927-3

## Use of Credit Information Disclosure

**Insurer's name:**
Allstate Indemnity Company

**Address:**



Important notices
Policy number: 916 696 485
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451

2775 Sanders Road
Northbrook, IL 60062

**Telephone number:**
1-800-ALLSTATE (1-800-255-7828)

Allstate will obtain and use credit information on you or any other member(s) of your household as a part of the insurance credit scoring process.

If you have questions regarding this disclosure, contact the insurer at the above address or phone number. For information or other questions, contact the Texas Department of Insurance at 1-800-252-3439 or P.O Box 149091, Austin, Texas 78714.

Article 21.49-2U, Sec. 7(d), of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.

If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.

Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.

Credit information is any credit related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.

Credit score or insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.

## SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN ARTICLE 21.42-2U

**PROHIBITED USE OF CREDIT INFORMATION.** An insurer may not:

1. use a credit score that is computed using factors that constitute unfair discrimination;

2. deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or

3. take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:

4. has statistical, actuarial, or reasonable underwriting information that: (A) is reasonably related to actual or anticipated loss experience; and (B) shows that the absence of credit information could result in actual or anticipated loss differences;

5. treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or

6. excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

**NEGATIVE FACTORS.** An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:

7. a credit inquiry that is not initiated by the consumer;

8. an inquiry relating to insurance coverage, if so identified on a consumer's credit report; or

9. a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

**EFFECT OF EXTRAORDINARY EVENTS.** An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates,

060 032 042
16011050022234
210000605002234060170005010004592500264901016023718

Important notices
Policy number:        916 696 485
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
                        (936) 634-4451



You're in good hands.

rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary loss of employment, by divorce, or by identity theft. In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may require reasonable written and independently verifiable documentation of the event and the effect of the event on the person's credit before granting an exception. An insurer is not required to consider repeated events or events the insurer reconsidered previously as an extraordinary event.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section. An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

**NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.** If an insurer takes an action resulting in an adverse effect with respect to an applicant for insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

**DISPUTE RESOLUTION; ERROR CORRECTION.** If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act (15 U.S.C. Section 1681i), as amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

CD-1

# Please Notify Us of Extraordinary Circumstances that Negatively Impacted Your Credit History Information

Please contact Allstate if you believe that any of the events set forth below resulted in extraordinary circumstances that may have negatively impacted your credit history information.

a) Divorce or Dissolution of Marriage
b) Death of a Spouse, Child, Parent or Member of the Same Household
c) Involuntary Unemployment
d) Catastrophic Medical Expense
e) Medical Crisis
f) Care of Adult Dependent
g) Identity Theft
h) Serious or Catastrophic Long-term Injury, Illness or Disability
i) Care of a Dependent Grandchild
j) Domestic Violence

Please contact Allstate at 1-877-304-2644 if you believe your credit history information may have been negatively impacted by extraordinary circumstances. Allstate will send you an Extraordinary Circumstances Appeal Form that you will be asked to complete and return to Allstate along with documentation that supports your appeal. Once your Extraordinary Circumstances Appeal Form and supporting documentation are received, Allstate will be able to determine whether or not you qualify for a lower premium. In any case, you will be notified of the outcome of our review.

**Please note that if you wish to pursue this additional review, please contact Allstate within 90 days of the date your policy begins as shown in the Declarations Page.**

X72463

# Important Information About Your Credit-Based Insurance Score

Please take a moment to read the notice immediately following this insert containing important information about our use of consumer reports and your rights under the federal Fair Credit Reporting Act. In that notice, we explain why we order credit reports and explain how important it is for you to check the accuracy of that information.



Important notices
Policy number: 916 696 485
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451

In the state where we issued your policy we are required by law to inform you of certain factors in your credit report(s) adversely affecting your credit-based insurance score. The most significant of these factors are:

The average number of months that accounts are listed on the credit report: Generally, the longer your average age of accounts, the more favorable your insurance score will be. Those with the most favorable insurance scores often have an average age of accounts of 16 years or longer. This includes accounts that are closed.

The number of months since the most recent delinquent payment: A delinquent payment is one made over 30 days late. Delinquent payments within the past five years may have an adverse effect on an insurance score and the more recent the delinquency, the greater the adverse effect. Please note that over time the impact of this type of delinquency on your insurance score will decrease and even disappear if there are no new delinquencies. Avoiding future delinquencies may benefit your insurance score.

The presence of a collection within the past five years: When we refer to a "collection," this could include collections that were previously paid off or collections on closed accounts. We exclude medical collections that are identified as such. Those with the most favorable insurance scores will typically have no collections on their credit report. Avoiding future collections may lead to a more favorable insurance score.

The presence of a derogatory item within the past five years: A derogatory item may include a delinquency, a collection, or a derogatory public record, such as a bankruptcy, judgment, lien, repossession, or foreclosure. Avoiding derogatory items in the future may lead to a more favorable insurance score.

You may request a copy of your TransUnion Personal Credit Report by writing to:

TransUnion National Disclosure Center
2 Baldwin Place
P.O. Box 1000
Chester, PA 19022
1(888)503-0048
www.transunion.com

XF4

## Consumer Report Information and Its Impact on Your Insurance

Many factors play a role in determining your insurance premium. Among the factors we consider are the following: where you live, the coverages and limits you've chosen and discount eligibility. In addition, we use consumer reporting agency information for eligibility and rating purposes. The federal Fair Credit Reporting Act requires us to inform you when we take adverse action based on a consumer report.

As permitted by law, we ordered credit report information about you – the named insured on the policy.

Based in whole or in part on the information provided to us by TransUnion National Disclosure Center, Allstate Indemnity Company is unable to offer you a lower rate: based on the credit information available to us.

### You May Request a Free Credit Report
Under Section 612 of the Fair Credit Reporting Act, you have the right to obtain a free copy of your consumer report from TransUnion if you request it within 60 days of receiving this notice (even if the report did not contain any information regarding credit status). You also have the right, under Section 611 of the Fair Credit Reporting Act, to dispute with TransUnion the accuracy or completeness of any information in any report(s) furnished by the agency.

If you'd like a free copy of your credit report, be sure to make your request within 60 days of receiving this notice. You can contact the reporting agency at:

TransUnion National Disclosure Center
2 Baldwin Place
PO Box 1000
Chester, PA 19022
Phone: 1-888-503-0048
www.transunion.com

Please keep in mind that the consumer reporting agency did not make the decision to take this adverse action and will not be able to provide you with any specific reasons regarding why we took this action. Also, any changes to your name or address within the past two years can affect the completeness of your report. If your information has changed, please let your insurance representative know.

### Have Questions? Please Contact Your Allstate Representative

060 032 042
1S01105002234
2I00000S00233406017X00010S01I004S92S0026490020160237118

Important notices
Policy number:  916 696 485
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
(936) 634-4451



Allstate.
You're in good hands.

Page 13 of 13

We hope you will take advantage of these rights and help us give you the lowest premium we can provide. If you have any questions about the information contained in this notice, or about your insurance in general, please contact your insurance representative.

## The Connection Between Credit History and Premium

We determine premiums using the information you provide on your insurance application, as well as using other factors. Certain credit report information has proved an effective predictor of insurance losses. It also allows us to keep costs competitive by helping make it possible for customers who are less likely to experience losses to pay less for their insurance. Keep in mind we use credit history in addition to, not instead of, our other characteristics. By considering this information, we can match likelihood of loss to premium even more precisely, and we think that's good for our customers. It allows us to keep insurance costs as competitive as possible for the greatest number of policyholders. You can also learn more about our use of credit information by visiting allstate.com.

XF1



**Texas important notice**

Policy number:  916 696 485
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
(936) 634-4451



Allstate.
You're in good hands.

Page 1 of 1

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Allstate's toll-free telephone number for information or to make a complaint at

**1-800-ALLSTATE® (1-800-255-7828)**

You may also write to Allstate at

National Support Center
PO Box 40047
Roanoke, VA 24022-0047

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

**1-800-252-3439**

You may write the Texas Department of Insurance

PO Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

### PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim, you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Allstate para informacion o para someter una queja al

**1-800-ALLSTATE® (1-800-255-7828)**

Usted tambien puede escribir a Allstate

National Support Center
PO Box 40047
Roanoke, VA 24022-0047

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas

PO Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

### DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

### UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.
**X67185-1**



## Privacy Statement

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



You're in good hands.

Thank you for choosing Allstate. We value you, respect your privacy and work hard to protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

### Our Privacy Assurance

- We do not sell your personal or medical information to anyone.
- We do not share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We require persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We require our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

### What Personal Information Do We Have and Where Do We Get It

We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, Social Security Number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources that may include, but is not limited to,

your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through internet activity, which may include, for example, your operating system, links you used to visit allstate.com, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use allstate.com.

### How We Use and Share Your Personal Information

In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:

- Fulfill a transaction you requested or service your policy
- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:

- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you



Privacy Statement
Policy number: 916 696 485
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451

- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

## The Internet and Your Information Security

We use cookies, analytics and other technologies to help us provide users with better service and a more customized web experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the website. This includes, for example, information regarding:

1) How we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) Who should use our website;
3) The security of information over the Internet; and
4) Links and co-branded sites.

## How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:

Allstate Insurance Company Customer Privacy Inquiries
P.O. Box 40047
Roanoke, VA 24022-0047

## Your Preference for Sharing Personal Information

We would like to share your personal information with one or more Allstate affiliates in order to make you aware of different products, services and offers they can provide. However, you can request that Allstate and its affiliate companies not share your personal information with our affiliates for marketing products and services.

To request that we not allow other Allstate affiliates to use your personal information to market their products and services, you can contact us by calling 1-800-856-2518 twenty-four hours a day, seven days a week. Please keep in mind that it may take up to four weeks to process your request. If you previously contacted us and asked us not to allow other Allstate affiliates to use your personal information, your previous choice still applies and you do not need to contact us again. If you would like to change your previous choice please call the number above at any time.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-ALLSTATE.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

**Allstate affiliates to which this notice applies:** Allstate County Mutual Insurance Company, Allstate Finance Company, Allstate Financial Services, LLC (LSA Securities in LA and PA), Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Investment Management Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Motor Club, Inc., Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Allstate Texas Lloyd's, Inc., Allstate Vehicle and Property Insurance Company, Deerbrook General Agency Inc., Deerbrook Insurance Company, Lincoln Benefit Life Company,

060 032 042
150105002234
2X00O05002234O60T3O0OD501100469250264901516033718

Privacy Statement
Policy number:       916 696 485
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
                          (936) 634-4451



You're in good hands.

North Light Specialty Insurance Company, Northbrook Indemnity Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

**For California residents:**
Pursuant to California law, we need to disclose to you that we would obtain your consent before sharing medical information for marketing purposes.

**For Montana residents:**
Pursuant to Montana law, you may also request a record of any disclosure of your medical information during the preceding three years. Please send requests to: Allstate Insurance Company Customer Privacy Inquiries, P.O. Box 40047, Roanoke, VA 24022-0047.

**For Nevada Residents:**
Allstate is committed to serving you when and where you prefer as we help you protect what you have today and prepare you for the future. To that end, and as Nevada law requires, if you do not want to receive sales calls from Allstate, you have the option to be placed on our internal "do not call" list. (Please disregard this notice if you have already been added to Allstate's internal "do not call" list.) You may make this request in the following convenient ways:

* Contact your local Allstate agency
* Call 1-800-ALLSTATE and speak with a customer representative
* Visit allstate.com, click on Contact Us and send us an e-mail
* Write to us at Allstate Insurance Company, Attn: Customer Service, P.O. Box 40047, Roanoke, VA 24022-0047

In your discussion or correspondence with us, please be sure to provide us with your name, address and all telephone numbers you wish to include on our list. If you have questions about this notice, you may contact us at the address listed above or you may also contact the Nevada Attorney General's office at:

Office of the Nevada Attorney General
Bureau of Consumer Protection
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101

Phone: (702) 486-3132
Email: BCPINFO@ag.state.nv.us

Please note that Allstate's "do not call" list is limited only to telephone solicitation calls. We may still contact you about your Allstate policy, billing issues, claims and other service matters.

**For Vermont residents:**
We won't share your personal information with Allstate companies for marketing purposes except as allowed by Vermont law.

(ed. 01/2012)

X73180v5



# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

**Amendatory Endorsement – AP4830**

In the General section, the Loss Reduction, Affinity Relationship Program And Other Items provision is added:

**Loss Reduction, Affinity Relationship Program And Other Items**
At your option:

1. **we will provide you,** or allow others to provide you, with one or more of the following subject to terms and availability under this provision:

   a) items, memberships, special offers, merchandise, points, rewards, airline miles, services, classes, seminars, or other things of value designed to help you or other persons insured under this policy manage the risks you or they face, including, but not limited to, loss reduction or safety-related items; or

   b) items, memberships, special offers, merchandise, points, rewards, airline miles, services, classes, seminars, or things of any other type that we think may be of value to you or someone else insured under this policy.

2. **we may make,** or allow others to make, one or more of the following: charitable contributions, donations, or gifts.

These items, memberships, special offers, merchandise, points, rewards, airline miles, services, classes, seminars, charitable contributions, donations, gifts, or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers, and gift cards.

All other policy terms and conditions apply.

Page 1

# Allstate Indemnity Company Manufactured Home Policy

**TEXAS**

**Policy:** {{{{{{{{{{{{{{{{

**Effective:** ///////////////////

**Issued to:**
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))

//////////////////////////////////
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{

Allstate Indemnity Company
The Company Named in the Policy Declarations
A Stock Company---Home Office: Northbrook, Illinois 60062

AS231

# ALLSTATE INDEMNITY COMPANY

## TABLE OF CONTENTS

### GENERAL
Definitions Used in This Policy........................2
Insuring Agreement .....................................4
Agreements We Make With You.....................4
Conformity to State Statutes.........................4
Coverage Changes .....................................4
Policy Transfer.............................................5
Residential Community Property....................5
Continued Coverage After Your Death...........5
Dividend Provision ......................................5
Cancellation...............................................5
Refusal to Renew .......................................6
Charge for Insufficient Funds.......................6
Concealment or Fraud.................................6
What Law Will Apply ...................................6
Where Lawsuits May Be Brought...................6
Action Against Us........................................7
Arbitration..................................................7

### SECTION I—YOUR PROPERTY

**Coverage A**
**Dwelling Protection**
Property We Cover Under Coverage A.............7
Property We Do Not Cover Under
Coverage A.................................................7

**Coverage B**
**Other Structures Protection**
Property We Cover Under Coverage B.............7
Property We Do Not Cover Under
Coverage B .................................................8
Losses We Cover Under Coverages A and B ....8
Losses We Do Not Cover Under
Coverages A and B.......................................8

**Coverage C**
**Personal Property Protection**
Property We Cover Under Coverage C.............11
Limitations On Certain Personal Property ........11
Property We Do Not Cover Under Coverage C..12
Losses We Cover Under Coverage C ...............13
Losses We Do Not Cover Under Coverage C.....14

### Section I—Additional Protection
Additional Living Expenses ...........................16

Credit Card, Bank Fund Transfer Card, Check
Forgery and Counterfeit Money......................17
Debris Removal ............................................17
Emergency Removal of Property ....................17
Fire Department Charges ..............................17
Temporary Repairs After a Loss .....................18
Trees, Shrubs, Plants and Lawns ...................18
Temperature Change ....................................18
Power Interruption........................................18
Arson Reward...............................................18
Collapse......................................................18
Change of Manufactured Home.......................19
Emergency Removal Service...........................19
Building Ordinance or Law .............................19
Foundation Water Damage .............................20
Civil Authority..............................................20

### Section I—Conditions
Deductible ...................................................20
Insurable Interest and Our Liability.................21
What You Must Do After A Loss ......................21
Options.......................................................22
How We Pay For A Loss.................................22
Our Settlement of Loss.................................24
Catastrophe Claims......................................24
Appraisal.....................................................24
Abandoned Property......................................25
Permission Granted to You ............................25
Our Rights To Recover Payment......................25
Our Rights To Obtain Salvage........................25
Action Against Us .........................................25
Loss to A Pair or Set .....................................25
Glass Replacement.......................................25
No Benefit to Bailee......................................25
Other Insurance............................................25
Property Insurance Adjustment ......................26
Lienholder ...................................................26
Mold, Fungus, Wet Rot and Dry Rot
Remediation as a Direct Result of a
Covered Water Loss......................................27

### SECTION II—LIABILITY AND PREMISES MEDICAL PROTECTION

**Coverage X**
**Liability Protection**
Losses We Cover Under Coverage X.................27
Losses We Do Not Cover Under Coverage X....27

## ALLSTATE INDEMNITY COMPANY

**Coverage Y**
**Premises Medical Protection**
Losses We Cover Under Coverage Y ................29
Losses We Do Not Cover Under Coverage Y.....29

**Section II—Additional Protection**
Claim Expenses..............................................30
Emergency First Aid........................................31
Damage to Property of Others.........................31

**Section II—Conditions**
What You Must Do After An Accidental Loss....31
What an Injured Person Must Do—
Coverage Y Premises Medical Protection.........31
Our Payment of Loss—Coverage Y Premises
Medical Protection..........................................32
Our Limits of Liability.......................................32
Bankruptcy .....................................................32
Our Rights to Recover Payment—Coverage X
Liability Protection ..........................................32
Action Against Us............................................32
Other Insurance—Coverage X
Liability Protection ..........................................32
Notice of Settlement of Liability Claim.............32

**SECTION III—OPTIONAL PROTECTION**

**Optional Coverages You May Buy**
Coverage F—Fire Department Charges ...........33
Coverage J—Extended Coverage On Jewelry,
Watches and Furs ...........................................33
Coverage P—Business Pursuits.......................33
Coverage SD—Satellite Dish Antennas...........33

## General

### Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **"Bodily injury"** —means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include diseases transmitted through sexual contact, including but not limited to:

   a)  any venereal disease;

   b)  Herpes;

   c)  Acquired Immune Deficiency Syndrome (AIDS);

   d)  AIDS Related Complex (ARC);

   e)  Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:

   a)  lead in any form;

   b)  asbestos in any form;

   c)  radon in any form; or

   d)  oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

   Unless such symptom, effect, condition, disease or illness results from:

   1)  heat, smoke or fumes from a fire which becomes uncontrollable or escapes from its intended location; or

   2)  the sudden and accidental discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises.**

2. **"Building structure"** —means a structure with walls and a roof.

3. **"Business"** —means:

   a)  any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for

**ALLSTATE INDEMNITY COMPANY**

such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

However, the mutual exchange of home day care services is not considered a **business**;

b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
   1) it is rented occasionally for residential purposes;
   2) a portion is rented to not more than two roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time; or
   3) a portion is rented as a private garage.

4. **"Business day"** —when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

5. **"Dwelling"** —means a manufactured home identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

6. **"Insured person(s)"** —means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any dependent person in **your** care.

Under **Coverage X—Family Liability Protection** and **Coverage Y—Guest Medical Protection "insured person"** also means:
   c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.

d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

7. **"Insured premises"** —means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) vacant land, other than farmland, owned by or rented to an **insured person**;
      5) land owned by or rented to an **insured person** where a single family dwelling is being built as that person's residence;
      6) any premises used by an **insured person** in connection with the **residence premises**;
      7) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

8. **"Occurrence"** —means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

9. **"Property damage"** —means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

10. **"Remediation"** —means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A—Dwelling**

Page 3

## ALLSTATE INDEMNITY COMPANY

**Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet or dry rot.

11. **"Residence employee"** —means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises.** This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person.**

12. **"Residence premises"** —means the **dwelling**, separate structures, and owned or rented grounds, where **you** reside as shown on the Policy Declarations.

13. **"We," "us,"** or **"our"** —means the company named on the Policy Declarations.

14. **"You"** or **"your"** —mean the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

### Insuring Agreement

In reliance on the information **you** have given us, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises.**

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises,** applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your.** This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your,** except as provided under **Losses We Do Not Cover Under Coverages A and B,** item A.8., and **Losses We Do Not Cover Under Coverage C,** item A.8.

The terms of this policy impose joint obligations on persons defined as an **insured person.** This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person.**

### Agreements We Make With You

**We** make the following agreements with **you:**

### Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### Coverage Changes

When **we** broaden coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us.** **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

Page 4

## ALLSTATE INDEMNITY COMPANY

### Policy Transfer
You may not transfer this policy to another person without our written consent.

### Residential Community Property Clause
This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

### Continued Coverage After Your Death
If you die, coverage will continue until the end of the premium period for:
1) your legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.
2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Dividend Provision – Participating Companies
To the extent and upon the conditions fixed and determined from time to time by **our** Board of Directors in accordance with the provisions of the Texas Insurance Code of 1951, as amended, **you** shall be entitled to participate in a distribution of **our** surplus.

### Cancellation
1. **You** may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send **you** any refund due when the policy is returned to **us**.

2. If this policy has been in effect for less than 60 days and is not a renewal policy **we** may cancel this policy if:
   a) **we** identify a condition that:
      1) creates an increased risk of hazard;

   2) was not disclosed in the application for insurance coverage; and
   3) is not the subject of a prior claim; or
   b) before the effective date of the policy, **we** have not accepted a copy of a required inspection report that:
      1) was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
      2) is dated not earlier than the 90th day before the effective date of the policy.

   An inspection report is deemed accepted unless **we** reject it before the 11th day after the date **we** receive it.

3. **We** may also cancel this policy at any time for any of the following reasons:
   a) **you** do not pay the premium or any portion of the premium when due.
   b) the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
   c) **you** submit a fraudulent claim.
   d) there is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium rate of this policy.

4. The effective date of cancellation cannot be before the 10th day after **we** mail the notice if **we** cancel for any of the reasons in paragraph 3. or the 30th day after **we** mail notice if **we** cancel for any other reason. **Our** notice of cancellation must state the reason for cancellation.

5. If **we** cancel, **our** notice to **you** will state that if the refund is not included with the notice, it will be returned on demand.

6. **We** may not cancel this policy solely because **you** are an elected official.

Page 5

## ALLSTATE INDEMNITY COMPANY

### Refusal to Renew

1.   We may not refuse to renew this policy because of claims for losses resulting from natural causes.

2.   We may not refuse to renew this policy solely because you are an elected official.

3.   We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

   If you have filed two claims in a period of less than three years, we may notify you in writing that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in paragraph 4. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

   A claim does not include a claim that is filed but is not paid or payable under the policy.

4.   If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the Policy Declarations and any mortgagee named on the Policy Declarations, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

### Charge for Insufficient Funds

If at any time, your payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account, you will be charged a fee.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy.

We do not cover any loss or occurrence in which the insured person has concealed or misrepresented any material fact or circumstance.

### What Law Will Apply

This policy is issued in accordance with the laws of Texas and covers property or risks principally located in Texas. Subject to the following paragraph, the laws of Texas shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside Texas, claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

### Where Lawsuits May Be Brought

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in Texas. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in Texas, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside Texas, lawsuits regarding that covered loss to property, or any other covered occurrence may also be brought in the judicial district where that covered loss to property, or any other covered occurrence happened.

Nothing in this provision, Where Lawsuits May Be Brought, shall impair any party's right to remove a state court lawsuit to a federal court.

Page 6

## ALLSTATE INDEMNITY COMPANY

### Action Against Us

No one may bring an action against us unless there has been full compliance with all policy terms.

Any action against us to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within two years and one day of the date the cause of action accrues.

If an action is brought asserting claims related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

### Arbitration

Any claim or dispute in any way related to this policy, by an **Insured person** against **us** or **us** against an **Insured person**, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:

a) no arbitrator shall have the authority to award punitive damages or attorney's fees;

b) neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

c) no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration

### Section I — Your Property

### Coverage A
### Dwelling Protection

### Property We Cover Under Coverage A:

1. **Your dwelling** at the address shown on the Policy Declarations.

2. Attached structures, equipment and accessories which are built into and form a permanent part of **your dwelling** when it was

purchased by you. This includes replacements for such items that remain a permanent part of **your dwelling**.

3. Steps connected to **your dwelling**, and oil and gas drums or tanks, connected to **your dwelling** which furnish heating or cooking fuel.

4. Construction materials and supplies at the address of the **residence premises** for use in construction, alteration or repair of **your dwelling**.

5. Wall-to-wall carpeting fastened to **your dwelling**.

6. Attached structures, equipment and accessories which **you** add to **your dwelling** and which become a permanent part of **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1. Any structure including fences or other property covered under **Coverage B — Other Structures Protection**.

2. Land.

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

### Coverage B
### Other Structures Protection

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures connected to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in construction, alteration or repair of structures other than **your dwelling**.

Page 7

## ALLSTATE INDEMNITY COMPANY

14. Wall-to-wall carpeting fastened to **building structures** on the **residence premises**, other than **your dwelling**.

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business purposes.**

2. Any structure or other property covered under **Coverage A—Dwelling Protection**.

3. **Land**.

4. Construction materials and supplies at the address of the **residence premises** for use in construction, alteration or repair of **your dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to **building structures**.

### Losses We Cover Under Coverages A and B:

We will cover sudden and accidental direct physical loss to property described in **Coverage A—Dwelling Protection** and **Coverage B —Other Structures Protection** except as limited or excluded in this policy.

### Losses We Do Not Cover Under Coverages A and B:

A. We do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B —Other Structures Protection**, consisting of or caused by the following:
   1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

   2. Water or any other substance that backs up through sewers or drains.

   3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

   4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

   5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

   6. Enforcement of any building laws, meaning any ordinance or law regulating the construction, repair or demolition of a building or structure, except as specifically provided in **Section I— Additional Protection** under Item 14, "Building Ordinance or Law."

   7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss we cover.

   8. Loss intentionally caused by an **insured person**. This exclusion will not apply to an innocent spouse or **insured person** who did not contribute to such loss or to the

**ALLSTATE INDEMNITY COMPANY**

interest of an innocent spouse or **insured person** in the damaged property.

9. Collapse, except as specifically provided in **Section I—Additional Protection** under item 11, "Collapse."

10. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

12. a)  wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b)  mechanical breakdown;
    c)  growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
    d)  rust or other corrosion;
    e)  contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises;**
    f)  smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
    g)  settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
    h)  insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or
    i)  seizure by government authority.

If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air

conditioning system, household appliance or fire protective sprinkler system within **your dwelling, we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

However, **we** do not cover any loss, including ensuing loss or the cost of tearing out and replacing any part of **your dwelling,** caused by the discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance, fire protection or sprinkler system where the source of the discharge or overflow is either below the surface of the ground or is within or below the slab or foundation of the **dwelling,** except as specifically provided in **Section I, Additional Protection** under item 15 — "Foundation Water Damage".

13. Freezing of:
    a)  plumbing, fire protective sprinkler systems, heating or air conditioning systems;
    b)  household appliances; or
    c)  swimming pools, hot tubs and spas within the **dwelling,** their filtration and circulation systems;
    or discharge, leakage or overflow from within a), b), or c) above, caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a)  maintain heat in the **building structure;** or
    b)  shut off the water supply and drain the system and appliances in the **building structure.**

Page 9

ALLSTATE INDEMNITY COMPANY

14. Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not. This exclusion applies to:
   a) fences, pavements, patios, foundations, retaining walls, bulkheads, piers, wharves and docks; and
   b) swimming pools, hot tubs, spas, their filtration and circulation systems if the swimming pool, hot tub or spa is not located within a heated portion of the **dwelling**.

15. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel;
   a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
   b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

16. Theft from **your residence premises** while **your dwelling** is under construction or installation, or of materials and supplies for use in construction or installation, until **your dwelling** is completed and occupied.

17. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 60 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction or installation is not considered vacant or unoccupied;

18. Weather Conditions that contribute in any way with a cause of loss excluded under **Losses We Do Not Cover Under Coverages A and B** to produce a loss.

19. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;

   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, installation, renovation or remodeling; or
   d) maintenance;

   of property whether on or off the **residence premises** by any person or organization.

20. Conversion, embezzlement or secretion by the selling dealer or by any person in lawful possession of **your dwelling**.

21. Collision or upset of **your dwelling**.

22. Discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is either below the surface of the ground or within or below the slab or foundation of the **dwelling**, except as specifically provided in **Section I, Additional Protection** under item 15— "Foundation Water Damage".

B. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** when:
   1) there are two or more causes of loss to the covered property; and
   2) the predominant cause(s) of loss is (are) excluded under items A.1 through A.22 above.

C. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

Page 10

## ALLSTATE INDEMNITY COMPANY

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

D.  **We** do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** consisting of or caused by the following. These exclusions apply regardless of whether any other cause contributed concurrently or in any sequence to produce the loss:

1.  Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

2.  War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

## *Coverage C*
## *Personal Property Protection*

### *Property We Cover Under Coverage C:*

A.  Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C —Personal Property Protection**. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there, or in use at a temporary residence when a direct physical loss **we** cover makes **your** **residence premises** uninhabitable, or to

personal property in student dormitory, fraternity or sorority housing.

2.  At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying. Coverage for personal property owned by a guest or **residence employee** is limited to 10% of **Coverage C — Personal Property Protection** when the personal property of the guest or **residence employee** is located anywhere other than the **residence premises**.

### *Limitations On Certain Personal Property:*

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C —Personal Property Protection**. The total amount of coverage for each group in any one loss is as follows:

1.  $100 —  Money, bullion, bank notes, coins and other numismatic property, scrip, stored values cards and smart cards.

2.  $200 —  Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3.  $200 —  Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4.  $1,000 —  Trading cards, subject to a maximum amount of $250 per card.

Page 11

**ALLSTATE INDEMNITY COMPANY**

5. $500 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, travelers checks, passports, securities, tickets, and stamps, including philatelic property.

6. $1,000 — Manuscripts, including documents stored on electronic media.

7. $500 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

8. $1,000 — Trailers not used with watercraft.

9. $500 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware and furs, including any item containing fur which represents its principal value.

10. $1,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $1,000 — Theft of firearms, including their related equipment and accessories.

12. $1,000 — Theft of silverware, pewterware, goldware and platinumware.

13. $5,000 — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
   a) the retail value of the media, if pre-programmed; or
   b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $400 — Theft of any recording or storage media while such property is away from the **residence premises**, this does not include recording or storage media used or intended for use in a **business**. Recording or storage media includes, but is not limited to:
   a) tapes;
   b) CDs, DVDs and other discs;
   c) records;
   d) disks;
   e) reels;
   f) cassettes;
   g) cartridges; or
   h) programs

*Property We Do Not Cover Under Coverage C:*

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, tenants not related to **you**.

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing

ALLSTATE INDEMNITY COMPANY

back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

### Losses We Cover Under Coverage C:

We will cover sudden and accidental direct physical loss to the property described in **Coverage C—Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   We do not cover:
   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless direct force of the wind or hail first makes an opening in the roof or walls and the wind forces rain, snow, sleet, sand or dust through this opening to cause the damage;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, we do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

   We do not cover damage caused by vehicles:
   a) owned or operated by a transporter of the **dwelling**, or
   b) while the **dwelling** is on a public or private road

7. Smoke.

We do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   We do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 60 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction or installation is not considered vacant or unoccupied.

9. Falling objects.

   We do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow. However, we do not cover loss, including ensuing loss or the cost of tearing out and replacing any part of **your dwelling**, caused by the discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is either below the surface of the ground or

Page 13

**ALLSTATE INDEMNITY COMPANY**

within or below the slab or foundation of the **dwelling**, except as specifically provided in **Section I, Additional Protection**, under item 15, "Foundation Water Damage".

We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

We do not cover loss at the **residence premises** under perils 12, 13, and 14 caused by or resulting from freezing while the **building structure** is vacant, unoccupied or under construction or installation unless **you** have used reasonable care to:
a) maintain heat in the **building structure**; or
b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

We do not cover:
a) theft or attempted theft committed by an **insured person**;
b) theft in or from the **residence premises** while under construction or installation of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;

e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## Losses We Do Not Cover Under Coverage C:

A. We do not cover loss to the property described in **Coverage C – Personal Property Protection** consisting of or caused by the following:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

We do cover sudden and accidental direct physical loss caused by fire; explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion

**Page 14**

**ALLSTATE INDEMNITY COMPANY**

applies whether or not the earth movement is combined with water

**We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.**

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**.

   **We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire**

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Loss intentionally caused by an **insured person**. This exclusion will not apply to an innocent spouse or **insured person** who did not contribute to such loss or to the interest of an innocent spouse or **insured person** in the damaged property.

9. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. Weather Conditions that contribute in any way with a cause of loss excluded under **Losses We Do Not Cover Under Coverage C** to produce a loss.

11. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;

    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, installation, renovation or remodeling; or
    d) maintenance

    of property whether on or off the **residence premises** by any person or organization.

12. Discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is either below the surface of the ground or within or below the slab or foundation of the **dwelling**, except as specifically provided in **Section I, Additional Protection** under item 15 — "Foundation Water Damage".

B. **We do not cover** loss to the property described in **Coverage C — Personal Property Protection** when:
   1) there are two or more causes of loss to the covered property; and
   2) the predominant cause(s) of loss is (are) excluded under items A.1 through A.12 above.

C. **We do not cover** loss to the property described in **Coverage C — Personal Property Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

**Page 15**

## ALLSTATE INDEMNITY COMPANY

D. **We** do not cover loss to the property described in **Coverage C—Personal Property Protection** consisting of or caused by the following. These exclusions apply regardless of whether any other cause contributed concurrently or in any sequence to produce the loss:

1. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

   We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

2. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

### Additional Protection

1. **Additional Living Expense**

   a) **We** will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** makes your **residence premises** uninhabitable. However, additional living expense due to **remediation** of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

   Payment for covered additional living expense as a result of a covered loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** will be limited to the least of the following:

   1) the time period required to repair or replace the property we cover, using due diligence and dispatch;

   2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or

   3) 3 consecutive months from the time of loss.

   In no event shall **our** payment for additional living expenses exceed an amount equal to 10% of the Limit Of Liability shown on the Policy Declarations under **Coverage A—Dwelling Protection.**

   b) **We** will pay **your** lost fair rental income resulting from a covered loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection**, less charges and expenses which do not continue, when a loss we cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 3 consecutive months from the time of loss. However, payments for **your** lost fair rental income expense due to **remediation** of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

   In no event shall **our** payment for lost fair rental income exceed an amount equal to 10% of the Limit Of Liability shown on the Policy Declarations under **Coverage A—Dwelling Protection.**

   The periods of time referenced above are not limited by the termination of this policy.

Page 16

## ALLSTATE INDEMNITY COMPANY

We do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
   We will pay for loss:
   a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   Our maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   We do not cover:
   a) loss arising from any **business** of an **insured person**;
   b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
   c) loss arising out of dishonesty of an **insured person**.

   When loss is discovered, the **insured person** must give us immediate written notice. If the loss involves a credit card or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card. Failure to comply with the terms and conditions of the card voids this protection.

   We will pay only for loss occurring during the policy period, including those losses discovered and reported to us within one year after the policy has terminated. We have the

right to investigate and settle any claim or suit as we deem appropriate. Full payment of the amount of insurance for any one loss ends our obligation under each claim or suit arising from the loss.

We will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2.a) of this protection. The defense will be at our expense, with counsel of our choice.

We have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2.b) of this protection. The defense will be at our expense, with counsel of our choice.

No deductible applies to this protection.

3. **Debris Removal**
   We will pay reasonable expenses you incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, we will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   We will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss we cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   We will pay up to $250 for service charges made by fire departments called to protect your property from a loss we cover at the **residence premises**. No deductible applies to this protection.

**Page 17**

**ALLSTATE INDEMNITY COMPANY**

6. **Temporary Repairs After A Loss**
We will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss we cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
**We** will pay up to $2500 under **Coverage A—Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. We will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure**.

We will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A—Dwelling Protection** or **Coverage B —Other Structures Protection**.

We do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

This coverage does not increase the limit of liability applying to the damaged property.

8. **Temperature Change**
**We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
**We** will pay for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11. **Collapse**
We will cover at the **residence premises**:
a) the entire collapse of a covered **building structure**;
b) the entire collapse of part of a covered **building structure**; and
c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss we cover under **Section I, Coverage C —Personal Property Protection**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof;
d) defective methods or materials used in construction, installation, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or

**Page 18**

ALLSTATE INDEMNITY COMPANY

renovation.

Collapse as referenced herein means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is sudden and accidental direct physical loss caused by one or more of the following:

a)  a loss **we** cover under **Section I, Coverage C—Personal Property Protection;**

b)  weight of persons, animals, equipment or contents; weight of rain, snow or ice which collects on a roof;

c)  defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

12. **Change of Manufactured Home**
If **you** replace **your dwelling** at **your residence premises**, **we** will cover the replacement under the provisions of this policy. **You** must notify **us** within 60 days and pay any additional premium required.

13. **Emergency Removal Service**
**We** will pay the reasonable expenses incurred by **you**, not to exceed $500, for each removal and return of **your dwelling**, if it is endangered by a loss **we** cover. The removal must be

urgently necessary to avoid damage to **your dwelling**.

14. **Building Ordinance or Law**
**You** may use up to $5,000 (at no additional premium) for the increased costs that **you** incur under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** due to the enforcement of any ordinance or law, which requires or regulates:

a)  the construction, demolition or repair of that part of **your dwelling** or another covered **building structure** damaged by a covered loss;

b)  the demolition and reconstruction of the undamaged part of **your dwelling** or another covered **building structure**, when that building or structure must be totally demolished because of a covered loss to another part of **your dwelling** or another covered **building structure**; or

c)  the remodeling, removal or replacement of the portion of the undamaged part of **your dwelling** or another covered **building structure** necessary to complete the remodeling, repair or replacement of that part of **your dwelling** or another covered **building structure** damaged by a covered loss.

**You** may use all or part of this Additional Protection to pay for the increased costs **you** incur to remove debris resulting from the construction, repair or replacement of property as stated above.

This Additional Protection does not reduce the limits of liability under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**.

**We** will not pay for the increased cost of construction:

a)  if **your dwelling** or other covered **building structure** is not rebuilt or repaired;

b)  if the rebuilt or repaired **dwelling** or other covered **building structure** is not intended for the same type occupancy as the current building or structure;

Page 19

**ALLSTATE INDEMNITY COMPANY**

c) until the **dwelling** or other covered **building structure** is actually repaired or rebuilt at the same premises; or

d) unless the rebuilding or repairs are made as soon as reasonably possible after the loss or damage, not to exceed 365 days after loss unless **you** have requested in writing that this time limit be extended for an additional 180 days.

**We** do not cover:

a) the loss in value to **your dwelling** or another covered **building structure** due to the requirements of any ordinance or law; or

b) the costs to comply with any ordinance or law which requires **you** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess the affects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above also applies to the increased cost **you** incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

15. **Foundation Water Damage**
In the event of the sudden and accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is located within or below the slab or foundation of the **dwelling**, we will pay up to the amount shown on the Policy Declarations for:

a) tearing out and replacing any part of the **dwelling** necessary to access, repair or replace that part of such system;

b) loss to property covered under **Coverage A—Dwelling Protection** and **Coverage C— Personal Property Protection** that results from the sudden and accidental escape of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system located within the slab or foundation of the dwelling.

This coverage does not include damage to the system from which the water or steam escaped.

16. **Civil Authority**
**We** will pay **you** up to $100 per day, for up to two weeks, to assist with the reasonable and necessary increase in living expenses and lost fair rental income should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against. However, payments for increased living expenses or **your** lost fair rental income expense due to **remediation** of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

The two week period of time referenced above is not limited by the termination of this policy.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

**Section I Conditions**

1. **Deductible**
**We** will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount,

## ALLSTATE INDEMNITY COMPANY

unless we have indicated otherwise in this policy.

The deductible amount applies to loss or damage caused by any peril other than fire or lightning.

2.  **Insurable Interest and Our Liability**
    In the event of a covered loss, we will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

    Each time there is a loss to any building insured under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**, the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the Policy Declarations.

    Section 862.053. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

3.  **What You Must Do After A Loss**
    In the event of a loss to any property that may be covered by this policy, **you** must:
    a)  promptly give **us** or our agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card or bank fund transfer card, give written notice to the company or bank that issued the card.
    b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
    c)  separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d)  give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit **us** to make copies.

e)  produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f)  as often as **we** reasonably require:
    1)  show **us** the damaged property.
    2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
    3)  produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and

g)  within 91 days after the loss, give **us** a signed, sworn proof of the loss. We must request a signed, sworn proof of loss not later than the 15th day after we receive **your** written notice, or we waive **our** right to require a proof of loss. Such waiver will not waive **our** other rights under this policy. This signed, sworn proof of loss must include the following information:
    1)  the date, time, location and cause of loss;
    2)  the interest **insured persons** and others have in the property, including any encumbrances;
    3)  the actual cash value and amount of loss for each item damaged, destroyed or stolen;
    4)  any other insurance that may cover the loss;
    5)  any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
    6)  at **our** request, the specifications of any damaged **building structure** or other structure; and
    7)  evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit

Page 21

## ALLSTATE INDEMNITY COMPANY

Money protection. State the cause and amount of loss.

We have no duty to provide coverage to you or an insured person under this section if you, an insured person, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to us.

4. **Options**

In the event of a covered loss, we have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in item 5 "**How We Pay For A Loss**".

Not later than the 15th day after we receive your written notice of claim, we must acknowledge receipt of the claim, begin any investigation of the claim, and specify the information you must provide.

If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

We may request additional information, if during the investigation of the claim such additional information is necessary.

We will notify you of the settlement option or options we intend to exercise within 15 business days after we receive your signed, sworn proof of loss. This shall be extended to 30 days if we have reason to believe the loss resulted from arson.

If we do not approve payment of your claim, we must give the reason for denying your claim, or give the reasons we require additional time to process your claim. But, we must either approve or deny your claim within 45 days after our request for additional time.

If covered property is partially destroyed or damaged by fire, you may:

a) receive payment for damage done to the covered property; or

b) have us repair the covered property so that it will be in as good a condition as before the fire.

5. **How We Pay For A Loss**

Under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** and **Coverage C—Personal Property Protection**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At our option, we may make payment for a covered loss before you repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered **under Coverage A— Dwelling Protection** and **Coverage B —Other Structures Protection,** without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;

2) the whole amount of loss for property covered under **Coverage C— Personal Property Protection** without deduction for depreciation, is less than $2,500 and if your Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

You may make claim for additional

Page 22

## ALLSTATE INDEMNITY COMPANY

payment as described in paragraph c), and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 365 days of the actual cash value payment unless you request in writing that this time limit be extended for an additional 180 days.

c) Building Structure Reimbursement. Under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**, we will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 365 days of the actual cash value payment unless you request in writing that this time limit be extended for an additional 180 days. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss,** and shall not be payable for any losses excluded in **Section I—Your Property,** under **Losses We Do Not Cover Under Coverages A and B.**

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises;**

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar

use on the same **residence premises;** or

3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection,** regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement describe above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Coverage C—Personal Property Protection;**

2) property covered under **Coverage B—Other Structures Protection** that is not a **building structure;**

3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure;** or

4) land.

Payment under a) b), or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction,

Page 23

## ALLSTATE INDEMNITY COMPANY

reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d)  Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C — Personal Property Protection**, we will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1)  the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2)  the cost of repair or restoration; or
3)  the limit of liability shown on the Policy Declarations for **Coverage C — Personal Property Protection**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1)  property insured under **Coverage A— Dwelling Protection** and **Coverage B —Other Structures Protection**, except wall-to-wall carpeting;
2)  antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced.

3)  articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector's items; or
4)  property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

6.  **Our Settlement Of Loss**
We will settle any covered loss with **you** unless some other person or entity is named in the policy or is legally entitled to receive payment. The amount of loss may be determined by an agreement between **you** and **us**, an appraisal award, or by a court judgment.

If we notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within 5 **business days** after we notify **you**. If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within 5 **business days** after the date **you** perform the act.

7.  **Catastrophe Claims**
If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **What You Must Do After a Loss**, **Our Settlement Options**, and **Our Settlement of Loss** provisions is extended for an additional 15 days.

Catastrophe or major natural disaster means a weather related event which:
a)  is declared a disaster under the Texas Disaster Act of 1975; or
b)  is determined to be a catastrophe by the State Board of Insurance.

8.  **Appraisal**
In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The appraisers shall first

**Page 24**

## ALLSTATE INDEMNITY COMPANY

select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state and county (or city if the city is not within a county) in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. The umpire shall make the award within thirty (30) days after the umpire receives the appraisers' submissions of their differences. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting such appraiser and the expenses of appraisal and umpire shall be paid by the parties equally.

9. **Abandoned Property**
We are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

10. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction or installation is not considered vacant.
b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction or installation.

11. **Our Rights To Recover Payment**
When we pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount we have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of the loss.

12. **Our Rights To Obtain Salvage**
We have the option to take all or any part of the damaged or destroyed covered property

upon replacement by **us** or payment of the agreed or appraised value.

We will notify **you** of **our** intent to exercise this option within 30 days after we receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage which **Section I Conditions** applies, unless:
a) There has been full compliance with all policy terms, and
b) The action is commenced within two years and one day after the inception of loss or damage.

14. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit To Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, we will pay the proportionate

Page 25

**ALLSTATE INDEMNITY COMPANY**

amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**

When the Policy Declarations indicates that the Property Insurance Adjustment Condition applies, you agree that, at each policy anniversary, we may increase the limit of liability shown on the Policy Declarations for **Coverage A—Dwelling Protection** to reflect one of the following:

a) the rate of change in the Index identified in the *Important Payment and Coverage Information* section of the Policy Declarations. The limit of liability for **Coverage A—Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1000; or

b) the minimum amount of insurance coverage we are willing to issue for the succeeding premium period under **Coverage A—Dwelling Protection** for **your dwelling** and other property we cover under **Coverage A—Dwelling Protection.**

Any adjustment in the limit of liability for **Coverage A—Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B —Other Structures Protection** and **Coverage C—Personal Property Protection** in accordance with our manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by us at the time a change in limits is made.

We will not reduce the limit of liability shown on the Policy Declarations without your consent. You agree that it is your

responsibility to ensure that each of the limits of liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease the limits of liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

19. **Lienholder**

A covered loss will be payable to the mortgagees or lienholders named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees and lienholders.

**We will:**

a) protect the mortgagee's or lienholder's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee or lienholder has no knowledge of these conditions; and

b) give the mortgagee or lienholder at least 10 days notice if this policy is cancelled.

The mortgagee or lienholder will:

a) furnish proof of loss within 91 days after notice of the loss if an **insured person** fails to do so;

b) pay upon demand any premium due if an **insured person** fails to do so;

c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee or lienholder has knowledge;

d) give **us** the mortgagee's or lienholders right of recovery against any party liable for loss; and

e) after a loss, and at **our** option, permit **us** to satisfy the mortgage or lien requirements and receive full transfer of the mortgage or lien.

Page 26

## ALLSTATE INDEMNITY COMPANY

This mortgagee interest provision shall apply to any trustee, loss payee, lienholder, or other secured party.

20. **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**

In the event of a covered water loss under **Coverage A — Dwelling Protection, Coverage B — Other Structure Protection** or **Coverage C — Personal Property Protection**, we will pay up to $5,000 for mold, fungus, wet rot or dry rot remediation.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection** or **Coverage C — Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet or dry rot.

This Condition does not increase the limits of liability under **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection** or **Coverage C — Personal Property Protection**.

## Section II — Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an

occurrence to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Losses We Do Not Cover Under Coverage X:

1. **We** do not cover **bodily injury** or **property damage** which is caused intentionally by or at the direction of an **insured person**.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any worker's compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

Page 27

## CITATION

**CLERK OF THE COURT**
Reba Squyres
District Clerk
P.O. Box 908
Lufkin, Texas 75902

**ATTORNEY FOR PLAINTIFF**
MIKE LOVE
PO BOX 527
LUFKIN TX 75902

### THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: ALLSTATE INDEMNITY COMPANY, Defendant

GREETINGS: You are commanded to appear by filing a written answer to the plaintiff's petition at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service hereof, before the 217th Judicial District Court of Texas, at the Courthouse in Lufkin, Texas.

Said plaintiff's petition was filed on **June 21, 2017 at 4:05 P.M.**

The file number of said suit being **CV-00412-17-06.**

The style of the case is:

**DAPHNE NOBLE FREE**
**VS.**
**ALLSTATE INDEMNITY COMPANY**

A copy of plaintiff's petition accompanies this citation.

Issued on this the 18th day of August, 2017.

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at office in Lufkin, Texas, on this the 18th day of August, 2017.

FEES UNPAID RULE 103

Reba Squyres, District Clerk
Angelina County, Texas
P.O. Box 908
Lufkin, Texas 75902
By: _Alicia Murphy_ , Deputy
Alicia Murphy, Deputy District Clerk

#17117

Cause: CV-00412-17-06

Executed when copy is delivered:
This is a true copy of the original citation with _Plaintiff's Original Petition and Request for Disclosure_
was delivered to defendant _____, on the _____ day of
_____, 20_____.

_____, Officer

_____, County, Texas

By:_____, Deputy

**ADDRESS FOR SERVICE:**
Defendant:
ALLSTATE INDEMINITY COMPANY
R/A CT CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS TX  75201

OFFICER'S RETURN

Came to hand on the _21_ day of _August_, 20_16_, at _4:30_, o'clock
_P_.m., and executed in _Nacogdoches_ County, Texas by delivering to each of the within
named defendants in person, a true copy of this Citation and _Plaintiff's Original Petition and Request for Disclosure_
with the date of delivery endorsed thereon, together with the accompanying copy of the plaintiff's petition, at
the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|---|---|---|
| Allstate Indemnity | 9/1/17 | 1999 Bryan St #900 Dallas, TX, Dallas Co. |
| R/A CT Corporation | | Article # 7016 1378 0002 1446 2569 |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

FEES:
Serving Petition and Copy  $_____
Total  $_____

_Procell Stark_, Officer

_____, County, Texas

By: _Van Kelley_, Deputy

Affiant

_SCH 1862  Exp 2/28/18_

*Rule 107 Verification: Subscribed and sworn to by the above named _____ before me this the _____
day of _____, 20___, to certify which witness my hand and seal of office.

_____
Person Administering Oath

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C.T. Corporation Systems
1999 Bryan St. Suite 400
Downs, TX 75201-3136

9590 9402 2678 6351 7276 24

2. Article Number (Transfer from service label)
7016 1370 0002 1444 2569

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)   AUG 2 1 2017   C. Date of Delivery

Chris Wells

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

# MIKE LOVE
# & ASSOCIATES, L.L.C.

P.O. Box 527
Lufkin, Texas 75902-0527

Ph. (936) 632-2000
Fax (936) 632-2005

Mike Love

ATTORNEYS & COUNSELORS AT LAW
202 E. Lufkin Ave.  Suite 201 Lufkin, Texas 75901

Sam Johnson

August 18, 2017

*Via Efiling*

Reba Squyres
DISTRICT CLERK OF ANGELINA COUNTY
215 East Lufkin Avenue, 1st Floor
Lufkin, Texas 75901

Re:    Cause No. CV-00412-17-06; *Daphne Noble Free v. Allstate Indemnity Company;*
       217th Judicial District; Angelina County, Texas

Dear Ms. Squyres:

Please, prepare the following citation for the above referenced matter:

Allstate Indemnity Company
By Serving its Registered Agent CT Corporation Systems
1999 Bryan Street, Suite 900
Dallas, TX 75201-3136

Thank you for your courtesy and assistance in this matter.

Sincerely,

Antoine Bravo
Litigation Paralegal

SJ/ab

Filed 9/12/2017 2:12 PM
Reba Squyres, District Clerk
Angelina County, Texas
By: Tiffany Silva,
Deputy Clerk

NO.  CV-00412-17-06

| | | |
|---|---|---|
| **DAPHNE NOBLE FREE** | § | **IN THE DISTRICT COURT** |
| **VS.** | § | **217TH JUDICIAL DISTRICT** |
| **ALLSTATE INDEMNITY COMPANY** | § | **ANGELINA COUNTY, TEXAS** |

## DEFENDANT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Allstate Indemnity Company, Defendant in the above styled and numbered cause of action, and in response to the complaints filed against it, would respectfully show unto this Honorable Court and Jury as follows:

### I.

### GENERAL DENIAL

At this time Defendant asserts a general denial to Plaintiff's Original Petition and all amended and/or supplemental petitions, as authorized by Rule 92, Texas Rules of Civil Procedure, and respectfully requests the Court and jury to require Plaintiff to prove the claims, charges and allegations, by a preponderance of the evidence, as required by the Constitution and the laws of the State of Texas.

### II.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by policy exclusions and/or limitations which are listed in the policy made the basis of this suit.

### III.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because conditions precedent to Plaintiff's recovery have not occurred.  For example, and without limitation, Plaintiff failed to provide proper written notice prior to suit as required by Section 541 of the Texas Insurance Code and by § 17.50(a) of the Texas Business and Commerce Code (Texas DTPA).

### IV.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because some or all of Plaintiff's claims are excluded by the applicable insurance policy.

### V.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the injuries, damages, and losses alleged in Plaintiff's pleadings, none being admitted, were proximately caused in whole or in part by the fault or negligence of Plaintiff or others.   Accordingly, Plaintiff's claims are barred or must be reduced under the doctrine of contributory or comparative fault.

### VI.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to cooperate in the handling of her claim, as required by the policy.

## VII.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim for punitive damages is barred because such an award would violate Defendant's due process, equal protection, and other rights under the United States Constitution and the Constitution of the State of Texas.

## VIII.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff failed to allege conduct warranting imposition of exemplary or punitive damages under applicable state law.

## IX.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including without limitation the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third party that may be joined in this suit.

## X.

### NINTH AFFIRMATIVE DEFENSE

Defendant hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this answer.

3

## XI.

### TENTH AFFIRMATIVE DEFENSE

Defendant asserts the limitations and restrictions contained in Chapter 41 of the Texas Civil Practice and Remedies Code.

COMES NOW, Allstate Indemnity Company, Defendant and formally requests a jury trial pursuant to Rule 216 of the Texas Rules of Civil Procedure and tenders the amount of $40.00 as jury fee.

WHEREFORE, PREMISES CONSIDERED, Defendant, Allstate Indemnity Company, prays that the Plaintiff recover nothing of and from the Defendant by reason of this suit, that Defendant be discharged without delay, with costs of court, and for such other and further relief, both general and special, at law and in equity, to which Defendant may show itself justly entitled, and for which Defendant will in duty bound, forever pray.

Respectfully submitted,

HOPE & CAUSEY, P. C.

*John M. Causey*

John M. Causey
State Bar No. 04019100
P. O. Box 3188
Conroe, Texas   77305-3188
(936) 441-4673 - Metro
(936) 441-4674 - Facsimile
hcdocket@hope-causey.com

### ATTORNEYS FOR DEFENDANT

Please be advised that the ***only*** valid email address for service of all documents in all matters handled by this firm is hcdocket@hope-causey.com.

4

## CERTIFICATE OF SERVICE

Pursuant to Rules 21. and 21a. of the Texas Rules of Civil Procedure, I hereby certify that the original of Defendant's Original Answer has been filed with the clerk of the court in writing, and a true and correct copy of Defendant's Original Answer has been delivered to all interested parties on September 12, 2017, correctly addressed to:

Mike Love
Mike Love & Associates, LLC
202 E. Lufkin Avenue
Suite 201
Lufkin, TX 75901

*John M. Causey*

John M. Causey

5

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| DAPHNE NOBLE FREE | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| | § | |
| V. | § | JURY DEMANDED |
| | § | |
| ALLSTATE INDEMNITY | § | NOTICE OF REMOVAL OF |
| COMPANY | § | ACTION UNDER 28 U.S.C. |
| | § | §1441(a) |

### LIST OF ALL COUNSEL OF RECORD

John M. Causey
State Bar No. 04019100
W. Timothy Bowersox
State Bar No. 00787115
Hope & Causey, P.C.
P.O. Box 3188
Conroe, Texas 77305-3188
(936) 441-4673 - Telephone
(936) 441-4674 – Facsimile
*Attorneys for Defendant Allstate Indemnity Company*


Mike Love
State Bar No. 24004778
Sam Johnson
State Bar No. 24047672
Mike Love & Associates, L.L.C.
202 E Lufkin Ave.
Lufkin, Texas 75901
(936) 632-2000 – Telephone
(936) 632-2005 – Facsimile
*Attorneys for Plaintiff Daphne Noble Free*

# EXHIBIT C

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Daphne Noble Free

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mike Love & Associates, L.L.C.; Mike Love, SBN 24004778; Sam Johnson, SBN 24047672; 202 E. Lufkin Ave, Lufkin, Texas 75901; Phone 936-632-2000; Fax 936-632-2005

## DEFENDANTS

Allstate Indemnity Company

County of Residence of First Listed Defendant    Cook County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
John M. Causey, SBN 04019100; W. Timothy Bowersox, SBN 00787115; Hope & Causey, P.C., P.O. Box 3188, Conroe, TX, 77305-3188, Phone-9364414673, Fax-9364414674

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
         Plaintiff

☐ 3  Federal Question
         *(U.S. Government Not a Party)*

☒ 2  U.S. Government
         Defendant

☒ 4  Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
         Proceeding

☒ 2  Removed from
         State Court

☐ 3  Remanded from
         Appellate Court

☐ 4  Reinstated or
         Reopened

☐ 5  Transferred from
         Another District
         *(specify)*

☐ 6  Multidistrict
         Litigation -
         Transfer

☐ 8  Multidistrict
         Litigation -
         Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1441(a)

Brief description of cause:
Removal from state to federal court because diversity jurisdiction and amount in controversy

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
      UNDER RULE 23, F.R.Cv.P.

DEMAND $
100,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
## IF ANY

*(See instructions):*
JUDGE   Robert K. Inselmann Jr.

DOCKET NUMBER   CV-00412-17-06

DATE
09/20/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ John M. Causey

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.