Filed 6/21/2017 4:05 PM
Reba Squyres, District Clerk
Angelina County, Texas
By: Alicia Murphy,
Deputy Clerk

CAUSE NO. CV-00412-17-06

| | | |
|---|---|---|
| DAPHNE NOBLE FREE | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | _____ JUDICIAL DISTRICT |
| | § | |
| ALLSTATE INDEMNITY COMPANY | § | ANGELINA COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

Plaintiff, Daphne Noble Free, files this original petition, request for declaratory judgment and request for disclosure against Defendant, Allstate Indemnity Company, and alleges as follows:

### DISCOVERY-CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 1 of Texas Rule of Civil Procedure 190.3.

### PARTIES

2. Plaintiff, Daphne Noble Free, f/n/a Daphne Noble, is an individual residing in Angelina County at 240 Shelley, Pollok, Texas 75969.

3. Defendant, Allstate Indemnity Company may be served with process via certified mail, return receipt requested by serving its designated agent for service of process, CT Corporation Systems, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

### JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

5. Plaintiff seeks monetary relief pursuant to TRCP, Rule 47(c)(2).

6.  Venue in Angelina County is proper in this cause under Section 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

### RULE 28. TEXAS RULES OF CIVIL PROCEDURE

7.  To the extent that any of the above-named Defendant is conducting business pursuant to a trade name or assumed name, then suit is brought against it pursuant to the terms of Rule 28, TEXAS RULES OF CIVIL PROCEDURE, and Plaintiff hereby demands that upon answering this suit, that Defendant answer in its correct legal name and assumed name.

### FACTS

8.  This lawsuit arises out of Defendant's refusal to pay full contractual benefits for Plaintiff's fire loss covered by an insurance policy issued by Allstate Indemnity Company. The incident in question occurred about 6:30 AM, June 18, 2015, in Angelina County, Texas. Plaintiff Daphne Free was notified by a neighbor that her home was on fire. After further investigation, it appears the fire was set intentionally by an unknown individual. Plaintiff submitted a claim to Allstate Indemnity Company, which acknowledged Plaintiff's claim on or about, August 19, 2015. To date, Defendant has made only partial payment on Plaintiff's claims; moreover, because the home was a total loss, Plaintiff's mortgage company has refused to accept or apply the partial payment tendered by Defendant to the mortgage.

## SUIT FOR BREACH OF CONTRACT & FAILURE TO PAY PLAINTIFF'S LIQUIDATED CLAIM

9.   Defendant's actions as described herein constitute a breach of contract committed upon Plaintiff in violation of Texas law causing damage to Plaintiff for which she now sues.

10.   October 5, 2015, Plaintiff requested Allstate provide a copy of the insurance policy including any endorsements or amendments.

11.   December 10, 2015, Plaintiff requested Allstate to provide information regarding Defendant's acceptance of the claim and Defendant's finalization of the claim.

12.   December 31, 2015, Defendant made a partial payment for $29,385.03 which Defendant claimed was the 'actual value' of Plaintiff's home. Those funds have been tendered to Plaintiff's mortgage holder which is holding the funds in escrow because the monies are insufficient to pay off the loan.

13.   Under the express terms of the policy, Plaintiff's home was covered for a value up to $50,320.00. The insurance contract is described as an "actual value" contract. However, Texas Insurance Cd. §863.053 controls payment of total loss fire claims in Texas stating:

(a) A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

(b) An insurance company shall incorporate verbatim the provisions of Subsection (a) in each fire insurance policy issued as coverage on real property in this state.

Tex.Ins.Cd. §863.053

## ALLSTATE INDEMNITY COMPANY

    c) a motorized wheel chair;
    d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
    e) a golf cart owned by an **insured person** when used for golfing purposes;
    f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
    g) lawn or garden implements under 40 horsepower;
    h) **bodily injury** to a **residence employee**.

6. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a) has inboard or inboard-outboard motor power of more than 50 horsepower;
    b) is a sailing vessel 26 feet or more in length;
    c) is powered by one or more outboard motors with more than 25 total horsepower;
    d) is designated as an airboat, air cushion, or similar type of watercraft; or
    e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   This exclusion does not apply to **bodily injury** to a **residence employee**.

7. We do not cover **bodily injury** or **property damage** arising out of:
    a) the negligent supervision by any **insured person** of any person; or
    b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. We do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. We do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. We do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. We do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

14. We do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not

**ALLSTATE INDEMNITY COMPANY**

apply if the **property damage** is caused by fire, explosion or smoke.

15. We do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. We do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

17. We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

18. We do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

## Coverage Y
## Guest Medical Protection

### Losses We Cover Under Coverage Y:

We will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:

1. We do not cover **bodily injury** which is caused intentionally by or at the direction of an **insured person**.

2. We do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. We do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

## ALLSTATE INDEMNITY COMPANY

6. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a) has inboard or inboard-outboard motor power of more than 50 horsepower;
    b) is a sailing vessel 26 feet or more in length;
    c) is powered by one or more outboard motors with more than 25 total horsepower;
    d) is designated as an airboat, air cushion, or similar type of watercraft; or
    e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

    This exclusion does not apply to a **bodily injury** to a **residence employee**.

7. We do not cover **bodily injury** arising out of:
    a) the negligent supervision by any **insured person** of any person; or
    b) any liability statutorily imposed on any **insured person**

    arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

    **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. We do not cover **bodily injury** arising out of the past or present business activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. We do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. We do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

13. We do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

14. We do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

## *Additional Protection*

We will pay, in addition to the limits of liability:
1. **Claim Expense**
   We will pay:
   a) all costs we incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded, including prejudgment interest, if any. **We** will pay this interest only until **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy. Interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than

## ALLSTATE INDEMNITY COMPANY

our limit of liability; we have no obligation to apply for or furnish bonds;
d) up to $150 per day for loss of wages and salary, when we ask you to attend trials and hearings;
e) any other reasonable expenses incurred by an **insured person** at our request.

### 2. Emergency First Aid
We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

### 3. Damage To Property Of Others
At **your** request, we will pay up to $500 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

We will not pay for **property damage**:
a) to property covered under **Section I** of this policy;
b) to property intentionally damaged by an **insured person** who has attained the age of 13;
c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
d) arising out of:
 1) past or present **business** activities;
 2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
 3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

### 1. What You Must Do After An Accidental Loss
In the event of **bodily injury** or **property damage**, you must do the following:
a) Promptly notify us or our agent stating:
 1) **your** name and policy number;
 2) the date, the place and the circumstances of the loss;
 3) the name and address of anyone who might have a claim against an **insured person**;
 4) the names and addresses of any witnesses.
b) Promptly send us any legal papers relating to the accident.
c) At **our** request, an insured person will:
 1) cooperate with us and assist us in any matter concerning a claim or suit;
 2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
 3) attend any hearing or trial.
d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 91 days after the date of loss. Also, an **insured person** must be prepared to show us any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

Unless **we** are prejudiced by an insured person's failure to comply with the requirements under a) and b) above, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notice, summons or other legal process, shall not bar liability under **Coverage X — Liability Protection** of this policy.

### 2. What An Injured Person Must Do — Coverage Y — Guest Medical Protection
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.

Page 31

## ALLSTATE INDEMNITY COMPANY

    b) Give us written authorization to obtain copies of all medical records and reports.
    c) Permit doctors we select to examine the injured person as often as we may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
We may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by us or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, our total liability under **Coverage X — Family Liability Protection** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

   Our total liability under **Coverage Y — Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights to Recover Payment — Coverage X — Family Liability Protection**
When we pay any loss, an **insured person's** right to recover from anyone else becomes ours up to the amount we have paid. An **insured person** must protect these rights and help us enforce them.

7. **Action Against Us**
    a) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
    b) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage X — Family Liability Protection**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and us, and the action against us is commenced within two years and one day of such judgment or agreement.
    c) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage Y — Guest Medical Protection**, unless such action is commenced within two years and one day after the date the expenses for which coverage is sought were actually incurred.
    d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II — Additional Protection**, unless such action is commenced within two years and one day after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred, or within 2 years and 1 day after the date of loss to the property if coverage is being sought under the **Damage to Property of Others** provision.
    e) No one shall have any right to make us a party to an action to determine the liability of an **insured person**.

8. **Other Insurance — Coverage X — Family Liability Protection**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

9. **Notice of Settlement of Liability Claim.**
    a. We will notify the **insured person** in writing of any initial offer to compromise or settle a claim against the **insured**

Page 32

**ALLSTATE INDEMNITY COMPANY**

person under the liability section of this policy. We will give the **insured person** notice within 10 days after the date the offer is made.

b. We will notify the **insured person** in writing of any settlement of a claim against the **insured person** under the liability section of this policy. We will give the **insured person** notice within 30 days after the date of the settlement.

## *Section III – Optional Protection*
## *Optional Coverages You May Buy*

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage F**
   **Fire Department Charges**
   The $250 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

2. **Coverage JT**
   **Increased Coverage on Theft of Jewelry, Watches and Furs**
   The limitation on theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware or furs under **Coverage C – Personal Property Protection** is increased to the amount shown on the Policy Declarations.

3. **Coverage P**
   **Business Pursuits**
   **Coverage X – Family Liability Protection** and **Coverage Y – Guest Medical Protection** are extended to cover specified **business** pursuits of an insured person.

   We do not cover:
   a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured** person when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;
   b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
   c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
   d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
   e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

4. **Coverage SD**
   **Satellite Dish Antennas**
   **Coverage C – Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C – Personal Property Protection**.

   The amount of coverage is shown on the Policy Declarations.

14. The insurance contract sold to Plaintiff purports to comply with Tex.Ins.Cd. §863.053 and contains the required provision, word for word. However, Defendant Allstate has steadfastly refused to pay Plaintiff's liquidated total loss claim.

15. Plaintiff has repeatedly requested that Defendant explain its legal basis for refusing to pay Plaintiff's liquidated claim under the express terms of the policy and as required by state law. In response, Defendant Allstate has only stated that since Plaintiff's home is a manufactured home, Allstate will not pay the stated value. Plaintiff, through Counsel, has requested but not received any legal authority for Allstate's position and basis for ignoring the express terms of the contract and the Texas Insurance code and the contract itself does not have any such exclusion for manufactured homes. In fact, the insurance policy at issue 1) specifically states that it is a "Manufactured Home Policy" and 2) specifically contains the statutory required language liquidating the insurance claim for the full value of the policy limits in the event of a total loss fire claim. See **Exhibit 1**.

### BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

16. Under Texas law, Defendant Allstate Indemnity Company owes its insured a duty of good faith and fair dealing. *Universal Life Insurance. Co. v. Giles*, 950 S.W.48 (Tex. 1997). Due to the special relationship that exists between an insurance company and its insured, an insurance company is liable for breaching its duty of good faith and fair dealing owed to its insured when an insurance company fails to attempt in good faith

to effectuate a prompt, fair and equitable settlement of a claim when the insurers liability is reasonably clear, as it is in this case.

17. Defendant Allstate Indemnity Company further breached its duties of good faith and fair dealing by failing and refusing to comply with Texas laws concerning Plaintiff's claims. Specifically, the Texas Legislature enacted Chapter 542 of the Texas Insurance Code also known as the Unfair Claim Settlement Practices Act to prohibit insurance companies and their representatives from engaging in Unfair Claim Settlement Practices. The Act mandates that "No insurer doing business in this state under the authority, rules and regulations of this code shall engage in unfair claim settlement practices."

18. In violation of the Unfair Claim Settlement Practices Act, Defendant Allstate Indemnity Company and its agents, employees and representatives, conducted prohibited acts and practices including, but not limited to, the following:

1. Knowingly misrepresenting to claimant pertinent facts or policy provisions relating to coverages at issue;

2. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policy;

3. Failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policy;

4. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear;

5. Compelling policyholder to institute suit to recover amounts due under its policy by offering substantially less than the amounts ultimately recovered in suits brought by them; or,

6. Failure of any insurer to maintain information required by §542.005. Thus, due to Defendant Allstate Indemnity Company's breach of the duty of good faith and fair dealing and Defendant's failure and refusal to pay Plaintiff's claim(s), Plaintiff has incurred actual damages, including:

   1. All benefits owed under the policy;
   2. Additional interest due to the delay in payment of this claim; and
   3. Attorney fees.

## STATUTORY VIOLATIONS OF CHAPTER 541 OF THE TEXAS INSURANCE CODE

19. The Texas Legislature enacted Chapter 541 of the Texas Insurance Code to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade practices. Further, the legislature made it clear that this Act "shall be liberally construed and applied to promote its underlying purposes as set forth in this section." *See* §541.008 of the Texas Insurance Code.

20. In violation of Chapter 541 of the Texas Insurance Code, Defendant knowingly[2] and intentionally engaged in unfair methods of competition and unfair and deceptive acts or practices in the business of insurance by engaging in Unfair Settlement Practices with respect to a claim by an insured or beneficiary including, but not limited to:

---

[1] Under Article '541.002 of the Texas Insurance Code, **"Knowingly"** means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim under Subchapter D is based. "Actual awareness" may be inferred if objective manifestations indicate that a person acted with actual awareness.

1. Misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

2. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

    A) a claim with respect to which the insurer's liability has become reasonably clear;
    B) a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;

3. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

4. Failing within a reasonable time to affirm or deny coverage of a claim;

## MISREPRESENTATION OF INSURANCE POLICY

21. Further, pursuant to §541.061 of the Texas Insurance Code, Defendant has engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance to misrepresent an insurance policy by:

    1. making an untrue statement of material fact;

    2. failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

    3. making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; or

    4. making a material misstatement of law.

## VIOLATIONS OF THE TEXAS ADMINISTRATION CODE

22. Section 28.201 *et seq.* of the Texas Administrative Code provides that "No insurer shall engage in unfair claim settlement practices." Plaintiff alleges that Defendant engaged in unfair claim settlement practices violating the following subsections of the Texas Administration Code:

(1) misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(2) failing to adopt and implement reasonable standards for prompt investigation of claims arising under their policies;

(3) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear;

(4) compelling policy holders to institute suits to recover amounts due under their policies by offering substantially less than the amounts ultimately recovered in suits brought by them;

.....

(6) failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(7) undertaking to enforce a full and final release from a policyholder when, in fact, only a partial payment has been made; and,

(8) refusing to pay claims without conducting a reasonable investigation based upon available information.

23. Plaintiff would show that Defendant Allstate Indemnity Company's employees were at all applicable times a "person" as that term is defined in section 541.002 of the Texas Insurance Code and that all or part of Defendant's violations

described herein were committed by and through its employees and other currently unknown employees and agents.

## STATUTORY VIOLATIONS
## OF TEXAS INSURANCE CODE 542.051 - 542.061

24. In the processing of Plaintiff's claims, Defendant Allstate Indemnity Company knowingly and intentionally violated Texas Insurance Code §542.055 - §542.058. Because Defendant is 1) liable to Plaintiff for a claim under the insurance policy and 2) not in compliance with this subchapter, the insurer [Defendant] is "liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney fees." If a suit is filed, the attorney fees shall be taxed as part of the costs in the case. Plaintiff further asserts that Defendant is liable for a separate 18% penalty for each separate violation of this subchapter.

## REMEDIES ARE NOT EXCLUSIVE

25. Further, pursuant to §542.061 of the Texas Insurance Code, the remedies provided by this subchapter are in addition to any other remedy or procedure provided by law or at common law.

## DECEPTIVE TRADE PRACTICE CLAIMS

26. Daphne Noble Free purchased a policy of insurance and paid valuable consideration in the form of premiums to Defendant Allstate Indemnity Company for protection and for coverage in the event of a loss. As a consumer, Daphne Noble Free is

entitled to the protections afforded by the Texas Legislature. Specifically, the legislature enacted the Texas Deceptive Trade Practice - Consumer Protection Act (DTPA) which requires that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."

27. Pursuant to the D.T.P.A., it is unlawful to engage in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. Defendant Allstate Indemnity Company and its agents, employees, and representatives have knowingly and intentionally engaged in false, misleading, or deceptive acts or practices including, but not limited to, the following:

1. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not;

2. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

3. Advertising goods or services with intent not to sell them as advertised;

4. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve or which are prohibited by law; and,

28. Pursuant to §17.50 of the D.T.P.A., Daphne Noble Free to her detriment, relied upon the statements, representations and warranties of Defendant Allstate Indemnity Company, its agents, employees or representatives in deciding to purchase

insurance with Defendant as well as initially trusting Defendant to properly and timely handle her claims. Moreover, the actions and the course of action of Defendant, its agents, employees and representatives have been unconscionable, including but not limited to the use or employment of acts or practices in violation of Chapter 541 and 542 of the Texas Insurance Code which have been and continue to be a producing cause of economic damages and mental anguish suffered by Plaintiff. As such, Plaintiff is entitled to maintain an action against Defendant as well as its agents, employees and representatives for such prohibited acts or practices. Plaintiff seeks recovery of all damages allowed by law for Defendant's violation of the D.T.P.A. including all actual damages owed under the policy, mental anguish, treble damages, attorney fees, pre and post judgment interests and costs of court.

## ATTORNEY FEES

29.     As a result of Allstate Indemnity Company's action(s) complained of in this Petition, Plaintiff was required to engage the services of the law firm of MIKE LOVE & ASSOCIATES, L.L.C., and in order of this Declaratory Judgment Action. Plaintiff, therefore, seeks reimbursement of reasonable attorney fees pursuant to CH 37 CPRC, Ch. 542 Insurance Code and the DTPA.

## REQUEST FOR JURY TRIAL

30. Plaintiff respectfully asserts her right to trial by jury.

## REQUEST FOR DISCLOSURE

31. Under TEXAS RULE OF CIVIL PROCEDURE 194, Plaintiff requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2(a)-(l).

## PRAYER

32. For these reasons, Plaintiff, Daphne Noble Free, asks that the Court issue citation for Defendant, Allstate Indemnity Company, to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

   a. Actual damages.
   b. Prejudgment and postjudgment interest;
   c. Statutory damages;
   d. Attorney fees;
   c. Court costs; and,
   d. All other relief to which Plaintiff is entitled.

Respectfully submitted,

MIKE LOVE & ASSOCIATES, L.L.C.
202 E. Lufkin Ave.
Lufkin, Texas 75901
Tel. 936.632.2000
Fax. 936.632.2005

By: _____
Mike Love
State Bar No. 24004778
Sam Johnson
State Bar No. 24047672
mikelove@texaslawoffice.com
sam.johnson@texaslawoffice.com
*ATTORNEYS FOR PLAINTIFF*
*DAPHNE NOBLE FREE*